**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| VOTE.ORG, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GEORGIA STATE ELECTION BOARD, *et al.*,<br><br>*Defendants*,<br><br>GEORGIA REPUBLICAN PARTY, INC.; and REPUBLICAN NATIONAL COMMITTEE,<br><br>*Proposed Intervenor-Defendants*. | Civil Action No. 1:22-cv-01734-JPB |

**PROPOSED INTERVENOR-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR AMENDED MOTION TO INTERVENE**

This Court should grant the motion to intervene and allow Movants—Georgia Republican Party, Inc. ("GAGOP") and the Republican National Committee ("RNC")—to be defendants in this case. As the Democratic Party recently observed, "political parties usually have good cause to intervene in disputes over election rules." *Issa v. Newsom*, Doc. 23, at 2, No. 2:20-cv-01044 (E.D. Cal. June 8, 2020). That is why courts across the country frequently grant political parties intervention in cases where state election laws are

challenged.[1] Indeed, as noted below, this Court has recently granted intervention to Movants in such cases several times. It should do so again

[1] *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) (granting intervention of right to county party committees, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee); *Democratic Party of Virginia v. Brink*, Doc. 40, No. 3:21-cv-00756 (E.D. Va. Feb. 3, 3022) (granting intervention to Republican Party of Virginia); *United States v. Georgia*, Doc. 27, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) (granting intervention to the RNC, NRSC, and Georgia Republican Party); *Concerned Black Clergy of Metro. Atlanta, Inc. v. Raffensperger*, Doc. 39, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021) (granting intervention to the RNC, NRSC, NRCC, and Georgia Republican Party); *Coalition for Good Governance v. Raffensperger*, Doc. 20, No. 1:21-cv-02070 (N.D. Ga. June 21, 2021) (same); *New Georgia Project v. Raffensperger*, Doc. 51, No. 1:21-cv-all1229, 2021 WL 2450647 (N.D. Ga. June 4, 2021) (same); *Ga. State Conf. of the NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021) (same); *Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, Doc. 86, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021) (same); *Asian Ams. Advancing Justice-Atlanta v. Raffensperger*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021) (same); *VoteAmerica v. Raffensperger*, Doc. 50, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021) (same); *Wood v. Raffensperger*, Doc. 14, No. 1:20-cv-5155 (N.D. Ga. Dec. 22, 2020) (granting intervention to the DSCC and Democratic Party of Georgia); *Alliance for Retired American's v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020) (granting intervention to the RNC, NRSC, and Republican Party of Maine); *Mi Familia Vota v. Hobbs*, Doc. 25, No. 2:20-cv-1903 (D. Ariz. Oct. 5, 2020) (granting intervention to the RNC and NRSC); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv 1143-DLR (D. Ariz. June 26, 2020) (granting intervention to the RNC and Arizona Republican Party); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459-wmc (W.D. Wis. June 23, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Edwards v. Vos*, Doc. 27, No. 20-cv-340-wmc (W.D. Wis. June 23, 2020) (same); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 ECT/TNL (D. Minn. June 23, 2020) (granting intervention to the RNC and Republican Party of Minnesota); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020) (granting intervention to the DCCC and Democratic Party of California); *Nielsen v. DeSantis*, Doc. 101, No. 4:20-cv-236-RH (N.D. Fla. May 28, 2020) (granting intervention to the RNC, NRCC, and Republican Party of Florida); *Priorities USA v. Nessel*, No. 19-13341, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting intervention to the RNC and Republican Party of Michigan); *Thomas v. Andino*, No. 3:20-cv-01552, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020) (granting intervention to the South Carolina Republican Party); *Corona v. Cegavske*, Order Granting Mot. to Intervene, No. CV 20-OC-644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020) (granting intervention to the RNC and Nevada Republican Party); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24-NKM (W.D. Va. Apr. 29, 2020) (granting intervention to the Republican Party of Virginia); *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *4 (D. Nev. Apr. 28, 2020) (granting intervention to four Democratic Party entities); *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020) (same); *Lewis v. Knudson*, Doc. 63, No. 3:20-cv-284 (W.D. Wis. Mar. 31, 2020) (same); *see also Democratic Exec. Cmte. of Fla. v. Detzner*, Doc. 20, No. 4:18-cv-520-MW-MJF (N.D. Fla. Nov. 9, 2018) (granting intervention to the NRSC).

because Movants satisfy the elements of both intervention of right under Fed. R. Civ. P. 24(a)(2) and permissive intervention under Fed. R. Civ. P. 24(b). Neither the Defendants nor the Plaintiffs take a position on intervention.

## INTERESTS OF PROPOSED-INTERVENORS

The GAGOP is one of the two major parties in Georgia and is the "State committee" for the Republican Party in Georgia, as defined by 52 U.S.C. § 30101(15). The GAGOP's mission is to elect Republican candidates in local, county, state, and federal elections in Georgia, and to represent Republicans voters across the state. Consistent with this mission, the GAGOP is empowered by Georgia law to govern its own affairs, Ga. Code § 21-2-111, and to "nominate its candidates for public office." Ga. Code § 21-2-151. Accordingly, GAGOP has a clear, substantial, and particularized interest in how elections are conducted, and in ensuring that Georgia elections are open, honest, and fair.

The RNC is a national party committee, as defined by 52 U.S.C. § 30101. The RNC manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The RNC has made significant contributions and expenditures in support of Republican candidates in Georgia and in mobilizing

and educating voters in Georgia in the past election cycles and intends to continue doing so in 2022 and beyond.

Movants have interests—their own and those of their members—in the rules and procedures governing Georgia's elections. That includes Georgia's crucial elections in 2022 for Governor, U.S. Senate, U.S. House, and other offices.

Movants oppose the Plaintiffs' attempt to invalidate the provision of Georgia law that requires an "oath for the elector or relative to write his or her usual signature with a pen and ink affirming that the elector is a qualified Georgia elector and the facts presented on the application are true" when seeking to request an absentee ballot. S.B. 202 § 25, 156th Gen. Assemb., Reg. Sess. (Ga. 2021 Act 9) ("SB 202") (amending O.C.G.A. § 21-2-381(a)(1)(C)(i)). SB 202 was passed, and duly enacted, to increase the efficiency, reliability, and integrity of Georgia's elections. If the government were to lose this case, or agree to settle it in a manner contrary to Movants' interests, the efficiency, reliability, and integrity of Georgia's elections would suffer significant harm. Likewise, Movants, their voters, and candidates would suffer similar harm. Movants would also have to divert their limited resources to address the resultant harm to their interests and prospects for fair and honest elections in Georgia.

To protect the fairness of this litigation, ensure the presentation of all proper evidence and arguments, and lend credibility to the disposition of this matter, this Court should grant Movants' motion to intervene in this case.

## ARGUMENT

### I. Movants are Entitled to Intervene as of Right.

Rule 24(a)(2) provides that on a timely motion, the Court must permit intervention by anyone who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Rule 24 is "liberally construed with all doubts resolved in favor of the proposed intervenor." *S.D. ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003); *accord Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."). Under Rule 24(a)(2), this Court must grant intervention as of right if (1) the motion is timely; (2) the movants have a legally protected interest in this action; (3) this action may impair or impede

that interest; and (4) no existing party adequately represents Movants' interests. *See Chiles v. Thornburg*, 865 F.2d 1197, 1213 (11th Cir. 1989). Movants here meet all four of these elements.

a. Movants' Motion is Timely.

There are four factors that the Court must consider when determining the timeliness of a motion to intervene: (1) the delay after the movant knew its interest in the case; (2) any prejudice to the existing parties from that delay; (3) prejudice to the movants from denying intervention; and (4) any unusual circumstances. *Id.* All four factors favor Movants.

Movants' motion to intervene is timely. This action was filed on May 2, 2022, the Defendants have not filed a responsive pleading, and the case has not moved beyond the initial pleading stage. There was no delay in filing of Movants' motion to intervene that could be considered untimely as courts have routinely granted intervention after similar or longer periods of time where the cases are at much later stages of the litigation. *See e.g. North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed after one year after answer); *Idaho Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1397 (9th Cir. 1995) (motion filed four months after complaint); *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, No. 15-CV-1724, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015) (motions filed between four and six weeks after complaint);

*Comm'r, Alabama Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161 (11th Cir. 2019) (motion filed two months after intervenors knew they had an interest); *City of Rome, Georgia v. Hotels.com, L.P.*, No. 4:05-CV-249-HLM, 2011 WL 13229683, at *3 (N.D. Ga. Nov. 4, 2011) (motion filed four months after privileged document filed).

There is no prejudice to the parties if the Movants are granted intervention. As noted above, the litigation has not proceeded past the initial pleading stage, no discovery has been conducted, and the Court has not decided any dispositive motions. Further, there are no unusual circumstances that warrant denial of Movants' motion.

Movants will comply with all deadlines governing the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery. This commitment undermines any claims of undue delay. *Emerson Hall Assocs., L.P. v. Travelers Casualty Ins. Co. of Am.*, No. 15-cv-447-jdp, 2016 WL 223794, at *2 (W.D. Wis. Jan. 19, 2016); *see Nielsen v. DeSantis*, No. 4:20cv236-RH-MJF, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020) (any delay can be "avoided through good case management").

While the Plaintiffs may have to respond to additional arguments if intervention is granted, Plaintiffs "can hardly be said to be prejudiced by

having to prove a lawsuit [they] chose to initiate." *Sec. Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995).

Granting Movants' intervention at this early stage of the proceedings will not delay the litigation, and it will allow Movants to protect their considerable interests. But if Movants are not allowed to intervene, those interests could be irreparably harmed by an order overriding Georgia's election rules and undermining the integrity of Georgia's elections.

Thus Movants' motion is timely and should be granted.

b. Movants have Legally Protected Interests in the Subject of this Litigation.

As Republican Party organizations who represent members, candidates, and voters in every county in Georgia, Movants have a "direct, substantial, legally protectible [*sic*] interest[s] in the proceeding." *Chiles*, 865 F.2d at 1213. These interests are sufficient for political parties to "meet the impaired-interest requirement for intervention as of right." *Citizens United v. Gessler*, No. 14-cv-002266-RBJ, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014). This is because, as Republican Party organizations, they exist to win elections and assist and protect their members and supporters in those efforts. Movants have an interest in all aspects of the voting process that might affect the

success of Republican candidates, and the ability of Republican voters to vote and not have their votes diluted by illegal or improperly cast ballots.

Laws that protect "the integrity of [the] election process," *Eu v. San Fran. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (Stevens, J., majority op.), are the types of laws that Movants have a specific interest in defending because they protect the integrity of Georgia's elections and ensure that Republican voters and candidates can participate in fair and orderly elections. "Changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the . . . Republican Party." *Ohio Democratic Party v. Blackwell*, No. 2:04-cv-1055, 2005 WL 8162665, at*2 (S.D. Ohio Aug. 26, 2005).

Changes to voting rules also directly impact how political organizations such as Movants spend and allocate their limited resources and can cause diversion of those limited resources away from the core interest and activity of Movants—electing Republican candidates. Movants' interest in protecting those limited resources are the type of interests that "are routinely found to constitute significant protectable interests" under Rule 24. *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. 2020); *see, e.g., Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2000).

Plaintiffs challenge the legality of Georgia's SB 202 under the federal Civil Rights Act. In cases "challenging . . . statutory schemes as unconstitutional or as improperly interpreted and applied, . . .the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles*, 865 F.2d at 1214. Thus, because Movants' candidates will "actively seek [election or] reelection in contests governed by the challenged rules," and its voters will vote under those rules, Movants have an interest in "demand[ing] adherence" to them. *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005). Therefore, Movants have a legally cognizable interest in this litigation.

c. This Action Threatens to Impair Movants' Interests.

Changes to the duly enacted rules that govern Georgia's elections, and compel a change in campaign strategy, inflict harm upon a legally recognized interest. *See generally id.* at 87 ("Because Shays and Meehan have asserted equivalent injury—competition intensified by BCRA-banned practices—and thus face an equivalent need to adjust their campaign strategy, they too suffer harm to their legally protected interests."). Movants are "so situated that disposing of [this] action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Movants "do not need to establish that their interests *will* be impaired . . . only that the

disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (emphasis in original). This inquiry is "flexible." *Chiles*, 865 F.2d at 1214. The language of Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967).

Here, if the Plaintiffs' challenge to a duly enacted Georgia law is successful, Movants will be required to adjust their election strategy and correspondingly expend resources to address the resulting change in the law. *See Shays*, 414 F.3d at 86 ("[a]s with promulgation of illegal administrative procedures, both these changes—additional competitors and additional tactics—fundamentally alter the environment in which rival parties defend their concrete interests . . . ."). This is the very type of impairment intervention of right that Rule 24(a)(2) is designed to allow.

d. No Party Adequately Represents Movants' Interests.

Rule 24 only requires that Movants show "that representation of [their] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Movants "should be allowed to intervene unless it is clear that [the current parties] will provide adequate representation." *Chiles*, 865 F.2d at 1214. None of the existing parties to this litigation adequately represent

Movants' interests. Plaintiffs seek to overturn a law that Movants support. The conflict between these two positions is clear, as is the difference in interests.

Moreover, the named Defendants do not represent the Movants' interests, adequately or otherwise. While Georgia may have an interest in defending its laws and protecting the integrity of elections in Georgia by ensuring that they are fair and orderly administered, its interests do not otherwise overlap with Movants. Georgia must consider a "broad spectrum of views, many of which may conflict" with the Movants' specific interests in advancing electoral participation by Republicans, maintaining the competitive electoral environment, and winning elections. *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001).

As the Fifth Circuit recently concluded, the "private interests" of committees of the Republican Party in upholding challenged election laws "are different in kind from the public interests of the State or its officials," including state and county election administrators. *La Union Del Pueblo Entero*, 29 F.4th at 309.

Movants are political parties interested in winning elections. Even though Movants may occupy the same posture in the case as Georgia, *i.e.* opposing the Plaintiff and defending the particular statute at issue, "the

government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of [a private party] merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001). Courts often conclude "that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

Here Georgia defends "the public interest," rather than Movants' "particular interest[s]" in protecting the rights of their candidates, voters, and party resources. *Coal. Of Ariz/N.M. Cntys. for Stable Economic Growth v. Dept. of Interior*, 100 F.3d 837, 845 (10th Cir. 1996). Georgia is obligated to consider "a range of interests [that] diverge from those of" the Movants such as "the expense [to the state] of litigation to defend the existing [law]," and "the social and political divisiveness of the election issue." *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). Additionally, the public officials tasked with defending the law are "likely to be influenced by their own desires to remain politically popular and effective leaders. These divergent interests create[] a risk that [Georgia] might not adequately represent the applicants" *Id.*

Finally, because Georgia must represent all Georgia citizens, Georgia necessarily represents some of the plaintiffs as well as all Georgia citizens who are not members or supporters of the Republican Party. *See Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999) (Defendants necessarily "represent interests adverse to [Movants]" because as the State, they also represent the Plaintiffs).

This is sufficient to warrant granting the Movants intervention.

## II. Alternatively, this Court Should Grant Movants Permissive Intervention.

Even if Movants are not entitled to intervention as a right under Rule 24(a)(2), this Court should grant Movants permissive intervention under Rule 24(b). Under Rule 24(b), permissive intervention may be granted when there is a timely motion and the party seeking intervention "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

For the reasons set forth above, this motion is timely. The action has not moved beyond the initial pleading stage, no discovery has been had, and no dispositive motion has been decided.

Movants will raise defenses that share common questions of law and fact with the claims and defenses of the existing parties. Plaintiffs seek to have the contested provision of the Georgia law invalidated under federal law and enjoined. Movants oppose the relief sought by the Plaintiffs, contest that the law at issue is valid, and argue that any injunctive relief is unwarranted and would be harmful to Movants' interests.

This obvious clash of interests is why courts allow political parties to intervene in defense of state election laws. *See, e.g. Swenson v. Bostelmann*, No. 20-cv-459-wmc, 2020 WL 8872099, at *2 (W.D. Wis. June 23, 2020) ("[T]he RNC/[Republican Party of Wisconsin] have a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, interest in the integrity of Wisconsin's elections.").

As stated above, there will be no delay to the proceedings resulting from granting the Movants' motion to intervene as the Movants commit to complying with all deadlines governing the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery.

And finally, there is no prejudice to any party that would result from granting the Movants' motion to intervene. As previously noted, Plaintiffs "can

hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *Security Ins. Co.*, 69 F.3d at 1381.

Movants "are not marginally affected individuals; they are substantial organizations with experienced attorneys who might well bring perspective that others miss or choose not to provide." *DeSantis*, 2020 WL 6589656, at *1. Intervention will allow "the Court . . . to profit from a diversity of viewpoints as [the Movants] illuminate the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). Moreover, any prejudice from granting intervention would be no greater than the prejudice from denying intervention. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ("[W]hen an order prevents a putative intervenor from becoming a party in *any* respect, the order is subject to immediate review.) (emphasis in original); *see Jacobson v. Detzner*, No. 4:18-CV-262-MW/CAS, 2018 WL 10509488, at *1 ("[D]enying [Republican Party organizations'] motion [to intervene] opens the door to delaying the adjudication of this case's merits for months—if not longer" as the issue is appealed).

Allowing Movants to intervene will promote consistency and fairness in the law, as well as efficiency in this case.

## CONCLUSION

Movants respectfully ask the Court to grant their motion and allow them to intervene as defendants in this important case.

Dated: July 12, 2022

Respectfully submitted,

/s/ *William Bradley Carver, Sr.*

William Bradly Carver, Sr.
Georgia Bar No. 115529
Alex Kaufman
Georgia Bar No. 136097
Jake Evans
Georgia Bar No. 797018
Baxter D. Drennon*
W. Dowdy White
Georgia Bar No. 320879
HALL BOOTH SMITH, P.C.
191 Peachtree Street, NE, Suite 2900
Atlanta, Georgia 30303
Telephone: 404.954.5000
Facsimile: 404. 954.5020
bcarver@hallboothsmith.com
jevans@hallboothsmith.com
akaufman@hallboothsmith.com
bdrennon@hallboothsmith.com
dwhite@hallboothsmith.com

Harmeet K. Dhillon*
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: 415.433.1700
Facsimile: 415.520.6593
harmeet@dhillonlaw.com

David A. Warrington*
Gary M. Lawkowski*
DHILLON LAW GROUP, INC.
2121 Eisenhower Ave, Suite 402
Alexandria, Virginia 22314
Phone: 703.574.1206
Facsimile: 415.520.6593
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

**Application for admission pro hac vice forthcoming*

*Counsel for Proposed Intervenor-Defendants Georgia Republican Party, Inc. and Republican National Committee*