IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VOTE.ORG, *et al.,* | |
| Plaintiffs, | |
| v. | Civil Action No.: 1:22-cv-01734-JPB |
| GEORGIA STATE ELECTION BOARD, *et al.,* | |
| Defendants. | |

**STATE DEFENDANTS' BRIEF IN SUPPORT
OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................. 3

      A.    SB202 and Georgia's Signature Oath Requirement ................ 3

      B.    Plaintiffs' Complaint and 52 U.S.C. § 10101(a)(2)(B) .............. 5

FED. R. CIV. P. 12(b)(1) & (b)(6) STANDARDS ................................. 6

ARGUMENT ................................................................................. 7

  I.    Plaintiffs Lack Standing ......................................................... 7

      A.    Plaintiffs Vote.org and Priorities USA lack
           organizational, associational, and third-party standing. ......... 9

      B.    Plaintiff GARA also lacks standing. ...................................... 12

  II.   The Complaint Should Be Dismissed for Failure to State a
      Claim. ................................................................................. 13

      A.    Section 10101(a)(2)(B) does not create a private right of
           action and may not be enforced in a suit under § 1983 by
           organizations like Plaintiffs. .................................................. 13

      B.    The signature oath requirement is "material" and does
           not violate § 10101(a)(2)(B). .................................................. 16

           1.    The signature oath requirement does not "deny"
                 the right to vote. .......................................................... 16

           2.    The signature oath requirement is not an act
                 "requisite to voting." .................................................... 17

           3.    The signature oath requirement is "material." ............ 18

      C.    The signature oath requirement was not enacted with
            an improper intent to keep voters from voting. ...................... 21

D.    Plaintiffs' facial challenge to the signature oath requirement fails because of the requirement's legitimate sweep. ........................................................ 22

E.    Plaintiffs' reading of § 10101(a)(2)(B) is unconstitutional as applied to the signature oath requirement. ........................ 24

CONCLUSION ................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 7

*Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2022 WL 769215
   (N.D. Ga. Mar. 14, 2022) ................................................................................ 6

*Brakebill v. Jaeger*, 905 F.3d 553 (8th Cir. 2018) .......................................... 24

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991) .................................................................................. 2, 19

*City of Boerne v. Flores* 521 U.S. 507 (1997) ........................................... 24, 25

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) .................. 14, 15

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)............................... 8, 10, 13

*Clark v. Martinez*, 543 U.S. 371 (2005) .......................................................... 24

*Common Cause v. Thomsen*, No. 19-CV-323-JDP,
   __ F. Supp. 3d __, 2021 WL 5833971 (W.D. Wis. Dec. 9, 2021) .................. 22

*Contractors Ass'n of E. Pa., Inc. v. City of Phila.*,
   6 F.3d 990 (3d Cir. 1993) ................................................................................ 20

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) .................. 23, 24

*Davis v. FEC*, 554 U.S. 724 (2008) ................................................................... 8

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on
   Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017) ........................................ 10

*Fla. State Conf. of NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) ...................................................................... 22

*Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*,
   522 F. Supp. 3d 1279 (N.D. Ga. 2021), *aff'd*, No. 21-11046,
   2021 WL 3870697 (11th Cir. Aug. 31, 2021) .................................................. 7

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) ................... 7, 8

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ................................................... 9, 11

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ....................... 20

*McDonald v. Bd. of Election Comm'rs of Chicago*,
    394 U.S. 802 (1969) ........................................................... 17, 25

*Raines v. Byrd*, 521 U.S. 811 (1997) ................................. 7

*Reynolds v. Sims*, 377 U.S. 533 (1964) .......................... 24

*Ritter v. Miglioril*, 142 S. Ct. 1824 (2022) ....................... 16

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) .................................. 14, 15, 22

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
    No. 1:21-CV-01284-JPB, __ F. Supp. 3d __, 2021 WL 6495360
    (N.D. Ga. Dec. 9, 2021) ................................................ 10

*Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645 (2017) ........................... 8

*Vega v. Tekoh*, No. 21-499, 2022 WL 2251304 (U.S. June 23, 2022) ............. 14

*Vote.org v. Callanen*, No. 22-50536, __ F.4th __,
    2022 WL 2389566 (5th Cir. July 2, 2022) ...............................*passim*

*Vote.org v. Callanen*, No. 5:21-CV-00649-JKP (W.D. Tex.) ............................ 20

*Vote.org v. Callanen*, No. 5:21-CV-00649-JKP,
    __ F. Supp. 3d __, 2022 WL 2181867 (W.D. Tex. June 16, 2022) .......... 20, 21

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ...................................................... 23

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) .................................. 7

**Constitutional Provisions**

U.S. Const. art. I, § 7 ..................................................... 4

U.S. Const. art. III, § 2 .................................................. 7

**Statutes**

42 U.S.C. § 1983 ............................................................ 13

52 U.S.C. § 10101(c) ....................................................... 15

52 U.S.C. § 10101(e) ....................................................... 15

Ala. Code § 17-11-4 ........................................................ 5

Ark. Code Ann. § 7-5-404(a)(1)(A) .................................................................. 5

Iowa Code Ann. § 53.2(5) ............................................................................... 5

Kan. Stat. Ann. § 25-1122(e)(1) ...................................................................... 5

O.C.G.A. § 21-2-381 ....................................................................................... 5

O.C.G.A. § 21-2-381(a)(1)(C)(i) .................................................................. 4, 5

O.C.G.A. § 21-2-381(b)(4) ......................................................................... 2, 17

O.C.G.A. § 21-2-385(d) ................................................................................... 5

O.C.G.A. § 21-2-388(2) ................................................................................... 5

SB387, Reg. Sess. (Ga. 2008) .......................................................................... 4

Tenn. Code Ann. § 2-6-202(a)(3) ..................................................................... 5

Tex. Elec. Code Ann. § 84.001(b) .................................................................... 5

W. Va. Code § 3-3-5(a) ................................................................................... 5

## Regulations

D.C. Mun. Regs. tit. 3, § 720.7 ........................................................................ 5

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................................................ 6, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................. 6, 13

Fed. R. Civ. P. 12(h)(3) ................................................................................... 6

## Other Authorities

*Requisite, Black's Law Dictionary* (11th ed. 2019) ......................................... 17

Eileen Y. Chou, *Paperless and Soulless: E-signatures*
   *Diminish the Signer's Presence and Decrease Acceptance,*
   6 Soc. Psych. & Personality Sci. 343 (2015) ................................................ 19

v

## INTRODUCTION

SB202 changed the process for applying for an absentee ballot:  Rather than comparing applicants' signatures to verify the applicant's identity (a process that was criticized by both sides of the political aisle), Georgia now verifies applicants' identities using more objective measures such as their driver's license number or other identification. But Georgia still requires that the voter swear an oath on the application, under penalty of law, that she is eligible to vote in Georgia, is a citizen of the United States, that the facts presented are true, and that she is the person executing the oath. In SB202, the Georgia legislature determined that the oath should be executed with the voter's signature in "pen and ink."

Plaintiffs do not directly challenge the oath requirement. Instead, they challenge the provision of SB202 requiring that the oath on an absentee-ballot application be signed by the voter. They claim this requirement violates the federal law prohibiting state actors from "deny[ing] the right … to vote" due to "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material." 52 U.S.C. § 10101(a)(2)(B) (formerly 42 U.S.C. § 1971).

For three main reasons, Plaintiffs' claim fails as a matter of law. First, requiring a voter to swear an oath on absentee-ballot application in ink does

not "deny" the right to vote. If a voter fails to sign the oath, Georgia officials must inform her of the failure and give her a chance to cure it. O.C.G.A. § 21-2-381(b)(4). And even if the voter does not obtain an absentee ballot, she can still vote in person. Second, signing an absentee-ballot application is not an "act requisite to voting." It is only an act requisite to the proper completion of an application to vote in one particular manner, that is, by absentee ballot. Regardless of the absentee-ballot application process, a Georgia voter may still vote in person before or on election day.

Third, the signature oath requirement is, indeed, "material" under § 10101(a)(2)(B). A properly completed and submitted absentee-ballot application leads to the issuance of a live ballot. The Georgia legislature found it important for voters to execute the required oath on their absentee-ballot applications with pen and ink. As the Supreme Court has held, "[a] signature certifies … that the signer has read the document" and "sends a message … that this document is to be taken seriously." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542, 546 (1991). Nearly every state requires a voter to sign an absentee-ballot application, and many states, like Georgia, expressly require the signature to be a wet signature.

Moreover, the Fifth Circuit's decision in *Vote.org v. Callanen*, No. 22-

50536, __ F.4th __, 2022 WL 2389566 (5th Cir. July 2, 2022), strongly supports dismissal. Vote.org there alleged that a Texas law that required a wet signature when registering to vote violates § 10101(a)(2)(B). *Id.* at *2. The Fifth Circuit stayed a resulting injunction pending appeal, concluding that Texas officials were likely to succeed in showing that Vote.org lacked standing and that the wet signature rule did not violate § 10101(a)(2)(B). *Id.* at *8.

Here, Plaintiffs' claim fails for those and additional reasons aside from the merits of their claim: Plaintiffs lack standing; § 10101(a)(2)(B) does not create a private right of action and cannot be enforced by way of 42 U.S.C. § 1983. Plaintiffs have also failed to adequately plead a facial challenge to the signature oath requirement, and have alleged no facts that, if true, would show that Georgia's requirement was enacted with improper intent to keep voters from voting. And Plaintiffs' reading of § 10101(a)(2)(B), if accepted, would render the statute unconstitutional. For these reasons, Plaintiffs' complaint should be dismissed.

## BACKGROUND

### A.    SB202 and Georgia's Signature Oath Requirement

Since the Founding, using a pen and ink to affix one's signature to a document has been regarded as a meaningful act that conveys the signer's endorsement. In 1776, John Hancock—whose name is now a synonym for

"signature"—signed the Declaration of Independence in letters large enough, it is said, for the British ministry to read them without spectacles. Such wet signatures often have legal effect. Under the Constitution, the President must sign a bill to approve it and make it law. *See* U.S. Const. art. I, § 7. The signatures of parties to an agreement may create a binding contract. And in Georgia, a voter's signature on a properly completed and submitted absentee-ballot application leads to the issuance of a live absentee ballot.

Between 2008 and 2021, Georgia required its clerks to compare the signature on an absentee-ballot application with the signature on the applicant's voter registration card. SB387, Reg. Sess. (Ga. 2008). However, in response to criticism from across the political spectrum, SB202 removed the signature-comparison requirement. It adopted instead a requirement that those applying to vote absentee include a "signature with a pen and ink affirming that the elector is a qualified Georgia elector and the facts presented on the application are true." O.C.G.A. § 21-2-381(a)(1)(C)(i).[1] SB202 requires the Secretary of State to develop a secure online portal to which voters could

---

[1] In limited circumstances, certain relatives may request an absentee ballot for a voter. In those cases, the approved relative must sign an oath swearing that the facts contained in the application are true and that they are an approved relative. That oath too is required to be executed in pen and ink.

4

upload their signed applications. *Id.*

Georgia is not alone in demanding a wet signature. Nearly every other state requires voters seeking to vote absentee to submit a signed application. *See* Exhibit A (compiling signature requirements). Of those states that require a signature, many states, like Georgia, require that it be made manually.[2] Several even compare the manual signature to the signature submitted at the time of voter registration, as Georgia previously did.

Voters who do not comply with the signature requirement, moreover, can still vote: They can cure the failure to sign and then obtain an absentee ballot. Alternatively, they can vote in person before election day. Or they can vote in person on election day itself. *See* O.C.G.A. § 21-2-381, 21-2-385(d), 21-2-388(2).

## B.    Plaintiffs' Complaint and 52 U.S.C. § 10101(a)(2)(B)

Nevertheless, in May 2022, Plaintiffs filed a one-count complaint asserting a cause of action under 52 U.S.C. § 10101(a)(2)(B) and 42 U.S.C. § 1983. Enacted as part of the Civil Rights Act of 1964, § 10101(a)(2)(B) provides:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not

---

[2] *E.g.*, Ala. Code § 17-11-4; Ark. Code Ann. § 7-5-404(a)(1)(A); D.C. Mun. Regs. tit. 3, § 720.7 ("digitized image" of signature allowed); Iowa Code Ann. § 53.2(5); Kan. Stat. Ann. § 25-1122(e)(1); Tenn. Code Ann. § 2-6-202(a)(3); Tex. Elec. Code Ann. § 84.001(b); W. Va. Code §3-3-5(a).

material in determining whether such individual is qualified under State law to vote in such election.

## FED. R. CIV. P. 12(b)(1) & (b)(6) STANDARDS

Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction. When such jurisdiction is lacking, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Plaintiffs, as "the party asserting jurisdiction," have the burden of proving jurisdiction. *Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2022 WL 769215, at *2 (N.D. Ga. Mar. 14, 2022) (Boulee, J.) (cleaned up). Subject-matter jurisdiction may also be challenged in a facial attack or a factual attack on the complaint. *Id*. Here, State Defendants make a facial attack on jurisdiction, which "questions subject matter jurisdiction based on the allegations in the complaint alone." *Id*. As on a Rule 12(b)(6) motion, "the court must consider the allegations of the complaint to be true." *Id*.

By contrast, Rule 12(b)(6) permits dismissal for failure to state a claim for relief. "In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 1279, 1283 (N.D. Ga. 2021) (Boulee, J.) (cleaned up), *aff'd*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021). However, as the Supreme Court has emphasized, "a

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

## ARGUMENT

### I.   Plaintiffs Lack Standing.

The clearest reason to dismiss under Rule 12(b)(1) is that no Plaintiff has standing to challenge the signature oath requirement. As the Eleventh Circuit has explained, "[f]ederal courts are not constituted as free-wheeling enforcers of the Constitution and laws." *Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th Cir. 2020) (cleaned up). Instead, federal courts can only consider actual "Cases" and "Controversies." U.S. Const. art. III, § 2. "To have a case or controversy, a litigant must establish that he has standing." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). According to the Supreme Court, "[n]o principle is more fundamental to the judiciary's proper role in our system of government." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

To show standing, Plaintiffs must allege "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson*, 974 F.3d at 1245. And, again according to the Supreme Court, a "plaintiff must demonstrate standing for

each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). An injury cannot be speculative. To the contrary, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis added; cleaned up; citations omitted).

Given these principles, the biggest issue facing Plaintiffs (at least as to standing) is that they seek to assert the rights of others. Organizations do not vote, so a statute purporting to protect the right to vote does not affect them. And, to assert the rights of their members, they must show associational standing, which in turn requires that the organization prove that its members, as the Eleventh Circuit has held, "would otherwise have standing to sue in their own right." *Jacobson*, 974 F.3d at 1249 (citation omitted). Here, only Plaintiff Georgia Alliance for Retired Americans even suggests (at ¶¶ 16-17) that it has members, but there is no non-speculative assertion that its members are harmed. The other two Plaintiffs assert instead purely organizational standing, alleging that they must divert resources to challenge the signature requirement. That too fails because, even if a diversion-of-

resources theory can satisfy the injury-in-fact requirement, it cannot do so here because the signature requirement does not apply to these Plaintiffs at all. Any actions they take in response to the signature requirement are simply their own budgetary decisions.

At bottom, Plaintiffs seek to assert the rights of third-party voters not before this Court. And, as hard as it is to satisfy the requirements of injury in fact, it is even harder for Plaintiffs to establish third-party standing; indeed, the Supreme Court looks upon third-party standing with disfavor. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). For a plaintiff to have standing to assert the rights of others not before the Court, the plaintiff must establish (1) "a 'close' relationship" between a plaintiff and supposedly represented third parties, and (2) a "'hindrance' to [the third parties'] ability to protect [their] own interests." *Id.* Under these well-established principles, Plaintiffs lack standing.

### A.   Plaintiffs Vote.org and Priorities USA lack organizational, associational, and third-party standing.

Plaintiffs Vote.org and Priorities USA claim that they are injured by having to divert resources to challenge the requirement that Georgia voters swear an oath by executing their written signature on their absentee ballot applications. Compl. ¶¶ 13–15, 18–19. This Court has found that a diversion-of-resources injury can support standing. *E.g.*, *Sixth Dist. of Afr. Methodist*

*Episcopal Church v. Kemp*, No. 1:21-CV-01284-JPB, __ F. Supp. 3d __, 2021 WL 6495360, at *3 (N.D. Ga. Dec. 9, 2021). But, even if such an injury is cognizable, it is not a trump card. If the alleged effect of the challenged law on the plaintiff's activities would not qualify as an injury in fact, the plaintiff's reaction to the challenged law doesn't qualify either. *See Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) (describing cases brought where a party has not itself been harmed as a "self-inflicted budgetary choice that cannot qualify as an injury in fact" (quotation omitted)). A plaintiff "cannot manufacture standing by choosing to make expenditures based on" an alleged harm that does not itself qualify as an injury in fact. *Clapper*, 568 U.S. at 402.

This point is fatal to any claims of injury from either Vote.org or Priorities USA—they are not harmed by their response to a law that does not apply to them. Neither group claims that its own rights are harmed by the signature requirement as they lack the right to vote. They also do not have any members, so they cannot assert associational standing. *Vote.org v. Callanen*, 2022 WL 2389566, at *3 n.2. Thus, any diversion of resources to "redesign [the] absentee ballot web application," to "achiev[e] … voter participation goals in

Georgia" or "to aid absentee voters" are self-inflicted budgetary decisions, not injuries from the signature oath requirement. Compl. ¶¶ 15, 19.

Vote.org and Priorities USA suggest no other way that they have been harmed. They do not allege that the voters they assist cannot vote because of the signature requirement. At best, they allege (at ¶¶ 13-15) that some unidentified Georgia voters will be unable to vote absentee, though even that allegation is speculative. Accordingly, both groups lack organizational standing. If they are to challenge the signature requirement, they must do so by asserting the rights of others in the narrow circumstances addressed by *Kowalski*. Neither group even tries to meet that demanding standard.

The Fifth Circuit, moreover, recently found it likely that Vote.org lacked third-party standing to challenge Texas' signature requirement. *Vote.org v. Callanen*, 2022 WL 2389566, at *4. Just as in the Fifth Circuit, Vote.org here makes no attempt to establish a close relationship with Georgia voters. And in *Kowalski*, for example, the Supreme Court held that even a future, unspecified attorney-client relationship was "no relationship at all." 543 U.S. at 130–31.

That conclusion applies with equal force to Vote.org and Priorities USA here. Just as a lawyer lacks a close relationship with a future, unascertained client, future, unascertained Georgia voters have no relationship to either

11

Vote.org or Priorities USA. Indeed, in parallel litigation in Texas, Vote.org expressly explained that its entire role, even when it *does* have a relationship with voters, is to allow them to register themselves. *Vote.org v. Callanen*, 2022 WL 2389566, at *4. That cannot satisfy the "close relationship" prong.

As to the second *Kowalski* factor, nothing in the Complaint even attempts to show why Georgia voters cannot themselves challenge the signature requirement. That silence is fatal. Voters regularly bring lawsuits on their own behalf, and anyone linked with Vote.org or Priorities USA is presumably able to do the same if the signature requirement injures them.

In sum, neither Vote.org nor Priorities USA has third-party standing to challenge the signature requirement. Any resources that they spend fighting it are self-inflicted budgetary choices that cannot manufacture standing.

## B.   Plaintiff GARA also lacks standing.

Georgia Alliance for Retired Americans (GARA), by contrast, suggests it can sue "on behalf of its members." Compl. ¶ 16. But its standing fails because those members also lack standing to challenge the signature requirement.

GARA's members are not injured by the signature requirement because—as addressed below—it deprives no one of the right to vote. GARA asserts that requiring a signature is "cumbersome," but it concedes that, even

12

for members that lack a printer, there are multiple other ways to obtain and submit an absentee-ballot application, including by having the State or county-election office mail them one. Compl. ¶ 17. Other options not listed in the Complaint abound—GARA members without a printer can have the document printed by friends or family or perhaps at a public library. GARA suggests that this process has "multiple points of failure or delay." *Id.* But such speculation that something might go wrong in the future cannot satisfy the injury-in-fact requirement. The injury must be "certainly impending," not merely "possible." *Clapper*, 568 U.S. at 409 (emphasis removed). Thus, GARA too lacks standing to assert the interests of its members.

## II.   The Complaint Should Be Dismissed for Failure to State a Claim.

Even if Plaintiffs had standing, this Court should still grant dismissal under Rule 12(b)(6) because of their failure to state a claim for relief.

### A.   Section 10101(a)(2)(B) does not create a private right of action and may not be enforced in a suit under § 1983 by organizations like Plaintiffs.

Most fundamentally, Plaintiffs' one-count complaint is based on 52 U.S.C. § 10101(a)(2)(B) and 42 U.S.C. § 1983, but § 10101(a)(2)(B) does not come with any private right of action, and cannot be enforced by any private parties in a § 1983 suit. *See Vote.org v. Callanen*, 2022 WL 2389566, at *5 n.5

(acknowledging but not deciding argument "that § 1971 does not create an implied cause of action or a private right enforceable in a § 1983 suit").

To be sure, as the Fifth Circuit has noted, "[c]ourts are divided on this point." *Id.* (citing conflicting cases). For example, the Eleventh Circuit held, nearly 20 years ago, that "the provisions of section 1971 of the Voting Rights Act may be enforced by a private right of action under § 1983." *Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003). But more recent Supreme Court decisions confirm that *Schwier* was decided incorrectly. As the Court recently reiterated, "Section 1983 does not provide an avenue for relief every time a state actor violates a federal law." *Vega v. Tekoh*, No. 21-499, 2022 WL 2251304, at *9 n.6 (U.S. June 23, 2022) (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005)) (cleaned up).[3]

---

[3] Indeed, even if § 10101(a)(2)(B) created an enforceable right that Plaintiffs could invoke, according to the Supreme Court:

> there is only a *rebuttable* presumption that the right is enforceable under § 1983. The defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right. Our cases have explained that evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.

*City of Rancho Palos Verdes*, 544 U.S. at 120 (cleaned up; emphasis added). Here, Congress created an alternative scheme for enforcing § 10101(a)(2)(B). It enacted detailed statutory provisions authorizing the Attorney General of

In any event, Plaintiffs' attempt to invoke a private right of action under § 10101(a)(2)(B) and § 1983 fails regardless of *Schwier*'s status. According to the Supreme Court, "to sustain a § 1983 action, the plaintiff must demonstrate that the [underlying] federal statute creates an individually enforceable right in the class of beneficiaries *to which he belongs*." *City of Rancho Palos Verdes*, 544 U.S. at 120 (emphasis added). This means that, "even if § 1971 provides an enforceable private right to individuals [through a § 1983 suit,] that does not mean Vote.org may invoke that right." *Vote.org v. Callanen*, 2022 WL 2389566, at *5 n.5. The class of beneficiaries created by § 10101(a)(2)(B) consists of *individuals* who have been *denied the right to vote* because of an immaterial error or omission of the sort described in the statute. Unlike the plaintiffs in *Schwier,* who were individual voters, 340 F.3d at 1285, Plaintiffs here are not in that class. Plaintiffs have not been denied the right to vote. Indeed, they cannot even vote. They are organizations, not Georgia voters. Thus, there is no private right of action for them to invoke.

---

the United States to enforce § 10101(a)(2)(B) with civil actions. *See* 52 U.S.C. § 10101(c), (e) and (g). This comprehensive enforcement scheme reflects Congress's judgment that § 10101(a)(2)(B) should not *also* be enforced with private suits. Defendants emphasize this point and the related points in the text to preserve them, if necessary, for appeal.

**B.**     **The signature oath requirement is "material" and does not violate § 10101(a)(2)(B).**

Even assuming Plaintiffs could assert a private right of action under § 10101(a)(2)(B) and § 1983, Plaintiffs' claim still fails because the signature oath requirement denies no one of the right to vote and is a "material" requirement.

Justice Alito recently explained that § 10101(a)(2)(B) has five elements:

> (1) the proscribed conduct must be engaged in by a person who is "acting under color of law"; (2) it must have the effect of "deny[ing]" an individual "the right to vote"; (3) this denial must be attributable to "an error or omission on [a] record or paper"; (4) the "record or paper" must be "related to [an] application, registration, or other act requisite to voting"; and (5) the error or omission must not be "material in determining whether such individual is qualified under State law to vote in such election."

*Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., joined by Thomas and Gorsuch, JJ., dissenting from the denial of stay application). Here, Plaintiffs' claim fails for three reasons: the signature oath requirement (1) denies no one the right to vote; (2) is not requisite to voting; yet (3) is material.

1.     *The signature oath requirement does not "deny" the right to vote.*

Requiring voters seeking to vote absentee to execute a signed oath on the application does not "deny the right of any individual to vote in any election." § 10101(a)(2)(B). It is only a requirement for applying for an absentee ballot. Voters who fail to sign an absentee-ballot application may still obtain an

16

absentee ballot and, even if they don't obtain one, they may still vote. The Supreme Court, moreover, has held that the right to vote means the right to vote in person, not to vote absentee. *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807–08 (1969).

First, when a voter submits an unsigned absentee-ballot application, Georgia officials should promptly alert her to the error, which the voter may then cure by signing the application. *See* O.C.G.A. § 21-2-381(b)(4).

Second, even if a voter fails to obtain an absentee ballot because they do not properly execute the required oath, the voter may still vote in person either on or before Election Day. As the Fifth Circuit explained, "the wet signature rule does not result in anyone being deprived of the right to vote because the Texas Election Code confers a right to cure and allows other means of registration." *Vote.org v. Callanen*, 2022 WL 2389566, at *6. "Thus, it is hard to conceive how the wet signature rule deprives anyone of the right to vote." *Id*. The same is true in Georgia, and it forecloses Plaintiffs' claim.

2.   *The signature oath requirement is not an act "requisite to voting."*

Nor is the signature requirement an "act requisite to voting," the fourth element of § 10101(a)(2)(B). Something is "requisite" if it is "required" or "necessary." *Requisite, Black's Law Dictionary* (11th ed. 2019). A signature on

an absentee-ballot application is neither required nor necessary for *voting*. It is required or necessary to obtain an *absentee ballot*, which is different from voting. *See Vote.org v. Callanen*, 2022 WL 2389566, at *6 ("[N]o applicant *must* comply with the wet signature requirement—there are plenty of alternative means to register."). Plaintiffs' claim fails for this independent reason as well.

   3.   *The signature oath requirement is "material."*

Finally, the signature oath requirement is a "material" requirement. Georgia's legislature concluded that voters must sign the oath in pen and ink to receive an absentee ballot. Requiring an oath before a voter receives an absentee ballot, where the voter swears that they are who they say they are and that the facts they are presenting are true, is vital to protecting the security of the absentee voting process. Nearly every state requires a voter to sign an absentee-ballot application, and many states, like Georgia, expressly require the signature to be a wet signature. *See* Exhibit A.

Requiring a voter to sign an absentee-ballot application is material because it helps ensure that the voter has carefully read the application and has made a considered decision to request an absentee ballot. The Supreme Court's observations about the Rule 11 signature requirement apply here: "A signature certifies … that the signer has read the document" and "sends a

18

message … that this document is to be taken seriously." *Bus. Guides*, 498 U.S. at 542, 546. The Georgia legislature reasonably concluded that a voter who signs an absentee-ballot application with pen and ink is more likely to have carefully read the application and considered her decision to apply for an absentee ballot than someone who simply clicks a button online or e-signs. The Fifth Circuit's recent explanation also applies equally here: "Requiring a wet signature on a voter registration application submitted via fax … ensures that an applicant has read, understood, and attested that he meets the qualifications for voting." *Vote.org v. Callanen*, 2022 WL 2389566, at *6.

A wet signature also bears on the recipient's perception of the document. One researcher found "[p]eople … more likely to discount the validity of an e-signed application than … an identical application signed by hand." Eileen Y. Chou, *Paperless and Soulless: E-signatures Diminish the Signer's Presence and Decrease Acceptance*, 6 Soc. Psych. & Personality Sci. 343, 343 (2015).

Plaintiffs suggest that, because some people may email or fax their applications, the signature requirement lacks materiality. *See* Compl. ¶ 4. But the signature requirement does not lose its importance if Georgia officials cannot conduct an ink analysis. And Vote.org has already shown that, if Georgia required voters to also deliver the absentee-ballot application if they

19

fax or upload it, Vote.org would challenge that too. *See Vote.org v. Callanen*, No. 5:21-CV-00649-JKP (W.D. Tex.). Georgia should not be punished for imposing a smaller burden on voters than it otherwise could.

Plaintiffs are also wrong to suggest (at ¶ 36) that Georgia's past practice of accepting applications with no signature somehow bears on the materiality of the signature requirement now. Georgia has learned from the hardships of past elections and has adapted its laws accordingly. "A legislative body does and should draw on past experience in formulating public policy." *Contractors Ass'n of E. Pa., Inc. v. City of Phila.*, 6 F.3d 990, 1009 n.18 (3d Cir. 1993).

Other arguments in the Complaint do not remedy the claim's textual deficiencies. The *only* case that the Complaint cites to support its claim is *Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018). Compl. ¶ 33. That case involved a practice where certain counties would reject absentee ballots because of certain errors or omissions on the ballot itself. *Id.* at 1308. Rejecting a *ballot* is different than rejecting an *application*. A rejected ballot may well result in a vote not counting. A rejected application allows a cure and the alternative ways to vote addressed above. *Martin* therefore does not help them.

The district court's decision in *Vote.org v. Callanen*, No. 5:21-CV-00649-JKP, __ F. Supp.3d __, 2022 WL 2181867 (W.D. Tex. June 16, 2022), now

stayed by the Fifth Circuit, also does not help Plaintiffs. To be sure, that case involved a challenge to Texas' requirement that voters include a wet signature on the registration form. *Id.* at *7. Unlike Georgia, however, Texas requires voters who submit that form online to also "mail[] or deliver [a] copy of the registration form." *Id.* at *8. A signature requirement related to a voter-registration form—which could affect whether voters can vote—is different from the requirement here, which at most affects who can vote *absentee*. Given that the Fifth Circuit found even Texas' more onerous requirement likely to comply with § 10101(a)(2)(B), the signature requirement here does too.

Nor is it relevant that Georgia requires digital signatures for other government documents. Compl. ¶ 5. The Complaint makes no attempt to address why other government forms must be treated the same as forms that lead to the issuance of a live ballot.

## C.   The signature oath requirement was not enacted with an improper intent to keep voters from voting.

Another reason Plaintiffs' claim must be dismissed is that they do not allege that the signature oath requirement was adopted with improper intent. Section 10101(a)(2)(B), as the Eleventh Circuit has explained, "was intended to address the practice of requiring unnecessary information for voter registration *with the intent* that such requirements would increase the number

21

of errors or omissions on the application forms[.]" *Schwier*, 340 F.3d at 1294 (emphasis added). For example, "one such tactic was to disqualify an applicant who failed to list the exact number of months and days in his age." *Id.* (cleaned up). "Such trivial information served no purpose other than as a means of inducing voter-generated errors … to justify rejecting applicants." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008).

Here, the Plaintiffs allege no facts that, if true, would support a finding that the signature requirement was enacted as such a tactic. And it was not: "A statute requiring a signature … is a long way away from" such tactics. *Common Cause v. Thomsen*, No. 19-CV-323-JDP, __ F. Supp. 3d __, 2021 WL 5833971, at *3 (W.D. Wis. Dec. 9, 2021). Nor have Plaintiffs alleged any facts showing the signature requirement was enacted "with the intent" to prevent any group of applicants from obtaining absentee ballots. *Schwier*, 340 F.3d at 1294. For that independent reason, Plaintiffs' claim must be dismissed.

### D. Plaintiffs' facial challenge to the signature oath requirement fails because of the requirement's legitimate sweep.

This Court cannot grant the relief Plaintiffs seek for yet another reason: Plaintiffs have failed to provide even the allegations necessary to sustain their facial challenge to the signature requirement. Because they seek "relief that would invalidate the statute in all its applications," "they bear a heavy burden

22

of persuasion," *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 200 (2008) (lead opinion of Stevens, J.), as facial challenges are disfavored. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–51 (2008). Indeed, as the Supreme Court has repeatedly held, even if a statute may be invalid in some applications, "[a] facial challenge must fail where the statute has a plainly legitimate sweep." *Crawford*, 553 U.S. at 202 (cleaned up). Moreover, "[w]hen evaluating a neutral, nondiscriminatory regulation of voting procedure," the "proper remedy—even assuming an unjustified burden on some voters"—is *not* "to invalidate the entire statute." *Id.* at 203.

Plaintiffs' facial challenge fails because the neutral, nondiscriminatory signature oath requirement serves legitimate state interests—including (a) having voters carefully digest the absentee-ballot application and (b) deterring fraud—without imposing an appreciable burden on voters. *See Vote.org v. Callanen*, 2022 WL 2389566, at *8 ("[T]he wet signature requirement helps deter voter registration fraud."); *id.* ("[O]ne strains to see how [the signature requirement] burdens voting at all." (cleaned up)).

In sum, Plaintiffs' facial challenge fails *Crawford*'s test. As the Eighth Circuit has put it, "[e]ven assuming that a plaintiff can show that an election statute imposes 'excessively burdensome requirements' on *some* voters, that

23

showing does not justify broad relief that invalidates the requirements on a statewide basis as applied to *all* voters." *Brakebill v. Jaeger*, 905 F.3d 553, 558 (8th Cir. 2018) (quoting *Crawford*, 553 U.S. at 202). That is yet another independent reason Plaintiffs' claim must be dismissed.

### E. Plaintiffs' reading of § 10101(a)(2)(B) is unconstitutional as applied to the signature oath requirement.

Beyond basic principles of statutory interpretation, there is another reason to reject Plaintiffs' reading of § 10101(a)(2)(B): If their reading were accepted, the statute would be unconstitutional. And, as the Supreme Court held in *Clark v. Martinez*, 543 U.S. 371 (2005), "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail[.]" *Id.* at 380–81.

Here, these principles require Plaintiffs' reading of the statute to be rejected. The right to vote is protected by the Fourteenth Amendment. *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). But Congress's power to enforce a right under Section 5 of the Fourteenth Amendment is remedial. It does not include the right to change or expand "what the right is." *City of Boerne v. Flores* 521 U.S. 507, 519 (1997). Instead, the Supreme Court has explained that any law purporting to enforce a Fourteenth Amendment right must show

"congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 520.

Plaintiffs invite this Court to adopt a reading of § 10101(a)(2)(B) that violates this requirement. As Judge Lagoa has emphasized, "the Supreme Court has unambiguously held that the right to vote *absentee* is not a fundamental interest that triggers Fourteenth Amendment protections." *New Ga. Project*, 976 F.3d at 1288 (Lagoa, J., concurring). Instead, the Court explained that to deny the "claimed right to receive absentee ballots" is not the same as to "deny … the exercise of the franchise." *McDonald,* 394 U.S. at 807–08. Accordingly, to interpret § 10101(a)(2)(B) to apply to a signature requirement that merely results in an absentee ballot would be to allow Congress to legislate under Section 5 in a way that does not enforce the right to vote but instead creates the very right to *absentee* voting that the Supreme Court has rejected.

In sum, because the Constitution does not recognize a right to vote absentee, Congress cannot constitutionally preempt a state statute on the theory that it affects Plaintiffs' ability to vote in that particular manner.

## CONCLUSION

This Court should grant the motion to dismiss.

Respectfully submitted this 13th day of July, 2022.

Christopher M. Carr
  *Attorney General*
  Georgia Bar No. 112505
Bryan K. Webb
  *Deputy Attorney General*
  Georgia Bar No. 743580
Russell D. Willard
  *Senior Assistant Attorney General*
  Georgia Bar No. 760280
Charlene McGowan
  *Assistant Attorney General*
  Georgia Bar No. 697316
State Law Department
40 Capitol Square, S.W.
Atlanta, GA 30334

Bryan P. Tyson
  *Special Assistant Attorney General*
  Georgia Bar No. 515411
Bryan F. Jacoutot
  Georgia Bar No. 668272
Loree Anne Paradise
  Georgia Bar No. 382202
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
(770) 434-6868
btyson@taylorenglish.com

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
  *Special Assistant Attorney General*
H. Christopher Bartolomucci*
Brian J. Field*
Cristina M. Squires**
Joshua J. Prince**
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

*Admitted *pro hac vice*
**Application for admission *pro hac vice*
pending

*Counsel for State Defendants Georgia
State Election Board, Edward Lindsey,
Janice W. Johnston, Sara Tindall
Ghazal, and Matthew Mashburn*

27

## CERTIFICATE OF COMPLIANCE

Under L.R. 7.1(D), the undersigned hereby certifies that the foregoing State Defendants' Brief in Support of Motion to Dismiss has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ *Gene C. Schaerr*
Gene C. Schaerr