UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VOTE.ORG, et al.,

        Plaintiffs,

    v.

GEORGIA STATE ELECTION
BOARD, et al.,

        Defendants.

CIVIL ACTION NO.
1:22-CV-01734-JPB

## ORDER

This matter is before the Court on the Motion to Dismiss [Doc. 36] filed by

the Georgia State Board of Elections and its members, Edward Lindsey, Janice W.

Johnston, Sara Tindall Ghazal and Matthew Mashburn (altogether, "Defendants").

This Court finds as follows:

## BACKGROUND

This case concerns the process for obtaining an absentee ballot in Georgia.

To vote absentee, a voter must submit an absentee ballot application.  [Doc. 1, p.

11].  O.C.G.A. § 21-2-381 sets forth the procedure for applying for absentee

ballots.  That section provides that "[a]ny person applying for an absentee-by-mail

ballot shall make application in writing on the form made available by the

Secretary of State."  Id. § 21-2-381(a)(1)(C)(i).  The form from the Secretary of

State requires the elector to provide the following information:  (1) "his or her name," (2) "date of birth," (3) "address as registered," (4) "address where the elector wishes the ballot to be mailed" and (5) "the number of his or her Georgia driver's license or identification card."  Id.  When applying for an absentee ballot, the elector must also "include the identity of the primary, election, or runoff in which the elector wishes to vote" and "the name and relationship of the person requesting the ballot if other than the elector."  Id.  Finally, those applying to vote absentee must sign an oath on the application that affirms "that the elector is a qualified Georgia elector" and that "the facts presented on the application are true." Id.  Particularly relevant here, the oath must be signed with "pen and ink" (hereinafter referred to as the "pen-and-ink requirement").  Id.

On May 2, 2022, Vote.org, Georgia Alliance for Retired Americans and Priorities USA (collectively, "Plaintiffs") filed suit against Defendants.[1]  [Doc. 1]. In a single cause of action under 42 U.S.C. § 1983, Plaintiffs assert that the pen-and-ink requirement violates § 1971 of the Civil Rights Act of 1964, codified at 52 U.S.C. § 10101(a)(2)(B) (the "Materiality Provision").  The Materiality Provision prohibits any "person acting under color of law" from

---

[1] Plaintiffs also sued Cathy Woolard, Kathleen D. Ruth, Aaron V. Johnson, Mark Wingate and Teresa K. Crawford, who are members of the Fulton County Registration and Election Board.  These defendants are not parties to the motion currently before the Court.

> deny[ing] the right of any individual to vote in any election
> because of an error or omission on any record or paper relating to
> any application, registration, or other act requisite to voting, if
> such error or omission is not material in determining whether
> such individual is qualified under State law to vote in such
> election.

52 U.S.C. § 10101(a)(2)(B).  Stated more simply, the Materiality Provision

"prohibits states from disqualifying potential voters based on their failure to

provide information not relevant to determining their eligibility to vote."  Schwier

v. Cox, 340 F.3d 1284, 1287 (11th Cir. 2003).

On July 13, 2022, Defendants moved to dismiss Plaintiffs' Complaint.

[Doc. 36].  The motion is now ripe for review.

## DISCUSSION

In their motion, Defendants argue that the Complaint should be dismissed

because Plaintiffs lack standing.  Alternatively, they contend that the Complaint

fails to state a claim.  The Court will address the standing argument first.

## A.   Standing

Defendants challenge Plaintiffs' standing to bring suit.[2]  Standing is

jurisdictional, see Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190, 1203 n.42

---

[2] Defendants challenge the standing of each of the named plaintiffs.  Importantly,
however, the Court "need not parse" the standing of each plaintiff so long as one of them
can demonstrate standing.  See Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty.
Bd. of Registration & Elections, 36 F.4th 1100, 1113-14 (11th Cir. 2022) (holding that

(11th Cir. 1991), and a motion to dismiss for lack of standing can rest on either a facial or factual challenge to the complaint, see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008).  In evaluating a facial challenge, a court considers only the allegations in the complaint and accepts them as true, whereas in a factual challenge, a court considers matters outside the pleadings, such as testimony and affidavits.  See Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Here, the parties do not reference matters outside the Complaint with respect to the standing issue.  Therefore, the Court will evaluate Defendants' standing argument as a facial challenge and will limit its analysis to the facts alleged in the Complaint.

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  To satisfy this case and controversy requirement, litigants must have standing.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue."  Hollywood Mobile Ests. Ltd. v. Seminole Tribe, 641 F.3d 1259, 1265 (11th Cir. 2011) (quoting CAMP Legal Def. Fund, Inc. v.

---

because one plaintiff had standing, the court was not obligated to consider whether the other plaintiffs had standing to maintain the suit).

City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006)).  The standing doctrine requires a plaintiff to show that he:  (1) suffered an injury-in-fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision.  Lujan, 504 U.S. at 560.  "These three elements 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case.'"  Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections, 36 F.4th 1100, 1113 (11th Cir. 2022) (quoting Lujan, 504 U.S. at 561).

### 1.    Injury-in-Fact

Plaintiffs in this case are organizations.  "An organization can establish standing in two ways:  (1) through its members (i.e., associational standing) and (2) through its own injury in fact that satisfies the traceability and redressability elements."  Id. at 1114.  Here, Defendants assert that Plaintiffs cannot establish standing through either of these methods.  The Court disagrees.

#### a.    *Associational Standing*

An organization has associational standing "'when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  Fla.

State Conf. of NAACP v. Browning, 522 F.3d 1153, 1160 (11th Cir. 2008)

(quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S.

167, 181 (2000)).

Plaintiffs assert that Georgia Alliance for Retired Americans ("Alliance")

has associational standing.  According to the allegations in the Complaint, Alliance

has "tens of thousands of members, including retirees from public and private

sector unions, community organizations, and individual activists, and is a chartered

state affiliate of the Alliance for Retired Americans."  [Doc. 1, p. 8].  Plaintiffs

contend that Alliance's mission is "to ensure social and economic justice and full

civil rights that retirees have earned after a lifetime of work."  Id.  Plaintiffs allege

that many of Alliance's members rely on absentee voting and that some of the

members do not own a printer, including Alliance's president.  Id.  Without a

printer, an individual who wishes to apply for an absentee ballot must engage in a

"cumbersome process involving some combination of calls to election officials,

mailed requests for an application, a mailed blank application, and a mailed

completed application."  Id.  In Plaintiffs' view, this cumbersome process "has

multiple points of failure or delay, any one of which could prevent the member

from receiving an absentee ballot."  Id.  Significantly, Plaintiffs allege that "some

Alliance members cannot vote in person, and an inability to successfully apply for an absentee ballot will deny them the right to vote." Id.

In determining whether Alliance has associational standing, the Court must first analyze whether Alliance's members would have standing to sue in their individual capacities. After considering the allegations, the Court finds that at least some of Alliance's members would have standing to sue in their own right, including its president. Given that Alliance has tens of thousands of members, it is extremely unlikely that the allegedly burdensome process for requesting an absentee ballot—which, according to Plaintiffs, has multiple points of failure or delay—will not cause a single member from being denied a ballot. See Browning, 522 F.3d at 1163 (stating that to satisfy the requirements of associational standing, plaintiffs need only establish that at least one member faces a realistic danger of having his or her application for voter registration rejected due to a mistake). "This probable danger is sufficient to satisfy the injury prong for associational standing." Democratic Party of Ga., Inc. v. Crittenden, 347 F. Supp. 3d 1324, 1337 (N.D. Ga. 2018).

The Court must next consider whether the interests at stake are germane to Alliance's purpose. This element is satisfied because Alliance's mission—to

ensure social and economic justice and full civil rights for retirees—is germane to the interests at stake, namely, participation in the democratic process.

Lastly, the Court must analyze whether the claim asserted or the relief requested requires the participation of individual members in the lawsuit.  Because Plaintiffs seek declaratory and injunctive relief, a decision favorable to Plaintiffs will accrue to the benefit of Alliance's members, and therefore, no need exists for individual joinder of any one member.  See Browning, 522 F.3d at 1160 (recognizing that when the relief sought is injunctive, individual participation of the organization's members is not normally necessary).

Ultimately, the Court finds that Plaintiffs have sufficiently alleged that Alliance's members would have standing to sue in their own right, the interests at stake are germane to Alliance's purpose and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Accordingly, Plaintiffs have shown that Alliance has associational standing.

        b.   *Organizational Injury*

As already stated, an organization may establish standing by showing that it has suffered its own injury in fact.  Ga. Ass'n of Latino Elected Offs., 36 F.4th at 114.  An organization typically makes this showing by relying on a "diversion of resources theory."  Id.  "Under this theory, an organization has standing 'if the

defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts.'" Id. (quoting Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1250 (11th Cir. 2020)). Importantly, "an organizational plaintiff must explain where it would have to 'divert resources away *from* in order to spend additional resources on combatting' the effects of the defendant's alleged conduct." Id. (quoting Jacobson, 974 F.3d at 1250).

Plaintiffs allege in the Complaint that Vote.org "is the largest 501(c)(3) nonprofit, nonpartisan voter registration and get-out-the-vote technology platform in the country." [Doc. 1, p. 6].  According to Plaintiffs, in preparation for the 2018 general and special elections, Vote.org "invested significant resources" and launched "an e-signature function on its web application that helped roughly 8,000 Georgians request an absentee ballot."[3]  Id. at 6-7.

Plaintiffs contend that the pen-and-ink requirement prevents Vote.Org from resuming the use of the e-signature function on its absentee ballot web application. Because Vote.Org can no longer use the tool, Plaintiffs assert that Vote.org "has been, and will continue to be, forced to divert resources from its general, nationwide operations—as well as its specific programs in other states—to

---

[3] At the time, Georgia did not require voters to sign their applications in pen and ink.

redesign its absentee ballot web application and employ more expensive . . . means of achieving its voter participation goals in Georgia." Id. at 7.

As demonstrated by the allegations referenced above, Plaintiffs have broadly alleged that Vote.Org has diverted its resources. Moreover, Plaintiffs have specifically alleged that Vote.org must divert resources from its general nationwide operations to redesigning its absentee ballot application. Given the procedural posture of this case in which the Court must accept the allegations as true, the Court is satisfied that Plaintiffs have sufficiently pled the injury-in-fact element of standing as to Vote.org. See Ga. Ass'n of Latino Elected Offs., 36 F.4th at 1115 (determining that the organizational plaintiff had standing where it both broadly and specifically alleged a diversion of resources); see also Browning, 522 F.3d at 1166 (holding that the NAACP and another organization had standing to challenge a voting requirement because the organizations would "divert personnel and time" from other activities "to educating volunteers and voters on compliance" with the requirement); Common Cause/Ga. v. Billups, 554 F.3d 1340, 1350 (11th Cir. 2009) (finding that the NAACP had standing to challenge a law that required voters to present photo identification because the organization was "actively involved in voting activities and would divert resources from its regular activities to educate and assist voters in complying with" the law).

## 2.      Traceability and Redressability

Even where a plaintiff establishes a concrete injury, that plaintiff must also satisfy the traceability and redressability elements of standing.  As to traceability, the Eleventh Circuit Court of Appeals has held that "[t]he injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  Ga. Ass'n of Latino Elected Offs., 36 F.4th at 115-16 (quoting Lujan, 504 U.S. at 560-61).  The redressability element requires that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'" of the court.  Lujan, 504 U.S. at 561 (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 38 (1976)).

Plaintiffs claim that the pen-and-ink requirement violates the Materiality Provision and prevents Vote.org from using its e-signature tool, which it developed for use in the 2018 general and special elections.  Because the e-signature tool no longer functions as intended, Plaintiffs have sufficiently pled an injury in fact by alleging that Vote.org had to divert resources from its general, nationwide operations to redesigning its absentee ballot web application, which it would not have had to do but for this change in the law.  At bottom, the Court finds that Vote.org's injury is sufficiently traceable to Defendants' alleged violations of the

Materiality Provision and is redressable by a favorable decision enjoining the pen-and-ink requirement.  Because the Court is satisfied that at least one of the plaintiffs has established standing, to the extent Defendants seek dismissal on standing grounds, the motion is **DENIED**.

**B.**   **Failure to State a Claim**

Defendants alternatively argue that even if Plaintiffs have standing, the Complaint is subject to dismissal for failure to state a claim.  In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement.  Id.  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted).  In sum, the complaint must

contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. Iqbal, 556 U.S. at 678. Accordingly, evaluation of a motion to dismiss requires two steps: (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

Defendants argue that the Complaint fails to state a claim for the following reasons: (1) the Materiality Provision does not create a private right of action and cannot be enforced by organizations like Plaintiffs; (2) the pen-and-ink requirement does not deny the right to vote; (3) the pen-and-ink requirement is not an act requisite to voting; (4) the pen-and-ink requirement is material; (5) the legislation was not passed with an improper intent; (6) Plaintiffs' cause of action is

an improper facial challenge; and (7) Plaintiffs' reading of the Materiality

Provision is unconstitutional as applied to the pen-and-ink requirement.

## 1.      Private Right of Action

Defendants argue that the Materiality Provision does not create a private

right of action.  The Court recognizes that courts in other circuits are divided as to

whether the Materiality Provision can be enforced via a private right of action.

Compare Migliori v. Cohen, 36 F.4th 153 (3d Cir. 2022) (holding that private

plaintiffs may enforce the Materiality Provision via 42 U.S.C. § 1983), with

McKay v. Thompson, 226 F.3d 752, 756 (6th Cir. 2000) (holding otherwise).

Significantly, the Eleventh Circuit has already directly addressed this issue in

Schwier v. Cox and concluded that the Materiality Provision can be enforced by a

private right of action under § 1983.  340 F.3d 1284, 1297 (11th Cir. 2003).  Given

this binding precedent, the Court finds that the Materiality Provision can be

enforced by a private right of action.  To the extent that Defendants seek dismissal

on this ground, the motion is **DENIED**.

Defendants also argue that even if the Materiality Provision provides an

enforceable private right of action to individuals, organizations like Plaintiffs may

not invoke that right.  In other words, Defendants contend that while an individual

voter who has actually been denied an absentee ballot by failing to comply with the

pen-and-ink requirement may be permitted to bring a private action, organizations who have not been denied the right to vote cannot bring such an action. Essentially, Defendants claim that § 1983 protects only individual rights.

As explained above, Alliance has demonstrated associational standing. Because Alliance's individual members have the right to vote and would have standing to litigate an impingement of that right, the Court is not convinced that an organization like Alliance is not permitted to bring a § 1983 claim. To the extent that Defendants seek dismissal on this basis, the motion is **DENIED**.

### 2.      Denial of the Right to Vote

In their Motion to Dismiss, Defendants argue that "[r]equiring voters seeking to vote absentee to execute a signed oath on the application does not 'deny the right of any individual to vote in any election'" because voters who fail to sign the absentee-ballot application are given an opportunity to cure or may vote in person. [Doc. 36-1, pp. 16-17].

Section 10101(e) defines "voting" as the following:

> all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election.

52 U.S.C. § 10101(e).  Significantly, this definition includes in the act of "voting" having one's ballot "counted and included in the appropriate totals of votes casts." It also includes "all action necessary to make a vote effective" and "registration or other action prerequisite to voting."  Here, Plaintiffs have alleged that county officials are required to reject absentee ballot applications that fail to comply with the pen-and-ink requirement.  This is significant because Plaintiffs have also asserted that some of Alliance's members cannot vote in person.  Therefore, the inability to successfully apply for an absentee ballot means that these members cannot engage in "voting" as defined under § 10101(e).  For these reasons, the Court finds that Plaintiffs have plausibly alleged the denial of the right to vote.

Notably, Defendants have not provided any support for their argument that the opportunity to cure an error rehabilitates any potential violation of the Materiality Provision, and the statute is silent on this point.  Moreover, this argument would require the Court to go beyond the pleadings and incorrectly address the merits of Plaintiffs' allegations at the motion-to-dismiss stage.  To the extent that Defendants argue that dismissal is required because the pen-and-ink requirement does not deny anyone the right to vote, the motion is **DENIED**.

### 3.    Requisite to Voting

In their next argument, Defendants contend that dismissal is required because the pen-and-ink requirement is not an act "requisite to voting."  [Doc. 36-1, p. 23].  Essentially, Defendants argue that the pen-and-ink requirement is "required or necessary to obtain an *absentee ballot*, which is different from voting."  Id. at 24.  In other words, Defendants contend that complying with the pen-and-ink requirement is not requisite to voting because there are alternative means to vote.

As previously stated, the Materiality Provision applies to any "record or paper relating to any application, registration, or other act requisite to voting."  § 10101(a)(2)(B).  Based on the plain language of the statute, the Court finds that the absentee ballot application squarely constitutes a "record or paper" relating to an "application" for voting.  As such, Defendants' argument that the pen-and-ink requirement does not constitute an act requisite to voting is without merit.  To the extent that Defendants seek dismissal on this ground, the motion is **DENIED**.

### 4.    Material to Voter Eligibility

In their Motion to Dismiss, Defendants argue that the pen-and-ink requirement does not violate the Materiality Provision because the requirement is material to the voter's qualifications and eligibility to vote.  The plain text of the

Materiality Provision "prohibits denying the right to vote based on errors or omissions that are not material in determining voter eligibility." Browning, 522 F.3d at 1173.  The Eleventh Circuit has recognized that "[t]he term 'material' . . . signifies different degrees of importance in different legal contexts." Id.  Indeed, the definition of "material" can range from "one similar to minimal relevance" to one "closer to outcome-determinative." Id. at 1174.  Importantly, the Eleventh Circuit has held that in deciding whether an error or omission is material in this context, a reviewing court must ask whether, "accepting the error as true and correct, the information contained in the error is material to determining the eligibility of the applicant." Id. at 1175.

To be qualified to vote in Georgia, an individual must meet the following requirements:  (1) be a citizen of the United States, (2) be at least eighteen years of age, (3) be a resident of Georgia and of the county in which he or she seeks to vote, (4) not have been convicted of a felony and (5) not have been declared mentally incompetent.  O.C.G.A. § 21-2-216.  Here, Plaintiffs alleged that the pen-and-ink requirement "is immaterial to determining whether an elector is qualified to vote" because the only qualifications are "U.S. Citizenship, Georgia residency, being at least eighteen years of age, not having been adjudged incompetent, and not having been convicted of a felony." [Doc. 1, p. 16].  Plaintiffs further alleged that "[t]he

method of signing an absentee ballot application bears no relation to those qualifications . . . as evidenced by the fact that [Georgia] accepts copies of signatures on application forms returned by fax or e-mail, and previously accepted applications with *no hand-written signature* from voters who applied using [Georgia's] online portal." Id.  After construing the allegations most favorably to Plaintiffs, the Court finds that Plaintiffs have plausibly shown that signing the oath in pen and ink is not material to determining the eligibility of an absentee voter.

Defendants argue that the pen-and-ink requirement is material because the requirement is "vital to protecting the security of the absentee-ballot application" and because it helps ensure that the voter has "carefully read the application and has made a considered decision to request an absentee ballot."  [Doc. 36-1, p. 24]. Even if Defendants can later prove that requiring applicants to sign in pen and ink is vital to protecting the security of the application or that the signature shows that that the applicant has carefully considered his or her decision, it is improper to consider these arguments at this time because the Court's review on a motion to dismiss is limited to the pleadings.  Ultimately, discovery may yield evidence demonstrating the materiality of requiring that the oath be signed in pen and ink. However, at this stage of the litigation, to the extent that Defendants seek dismissal because the pen-and-ink requirement is material, the motion is **DENIED**.

### 5.    Improper Intent

Next, Defendants assert that Plaintiffs' Complaint must be dismissed because Plaintiffs failed to allege that the pen-and-ink requirement was adopted with improper intent.  In essence, Defendants contend that Plaintiffs have not alleged any facts showing that the pen-and-ink requirement was enacted with the intent to prevent any particular group of voters from obtaining absentee ballots.

The Eleventh Circuit and other courts have held that the Materiality Provision's primary purpose is "to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." Schwier, 340 F.3d at 1294. Significantly, none of the cases explaining why Congress chose to enact the Materiality Provision supports the proposition that improper intent is an element to recovery or is a required showing in any way.  Importantly, the plain language of the statute itself says nothing about intent.  Because stating a claim for violating the Materiality Provision does not require a plaintiff to show improper intent, the motion is **DENIED** to the extent that Defendants seek dismissal on this ground.

### 6.    Improper Facial Challenge

Defendants contend that dismissal is proper because Plaintiffs have failed to provide enough allegations to sustain a facial challenge.  More particularly, Defendants argue that Plaintiffs' facial challenge fails because the pen-and-ink requirement serves legitimate state interests, "including (a) having voters carefully digest the absentee-ballot application, and (b) deterring fraud—without imposing an appreciable burden on voters."  [Doc. 36-1, p. 29].  In this argument, Defendants again ask this Court to consider and contemplate matters outside the pleadings, which is not permissible on a motion to dismiss.  Accordingly, to the extent that Defendants seek dismissal on this ground, the motion is **DENIED**.[4]

### 7.    Unconstitutional Application

In their final argument, Defendants raise the doctrine of constitutional avoidance.  More specifically, Defendants contend that if this Court were to adopt

---

[4] The Court also notes that the rules regarding "facial" and "as-applied" challenges generally apply when a plaintiff challenges the constitutionality of a statute.  Indeed, the Eleventh Circuit has stated that a litigant may challenge the *constitutionality* of a statute by asserting a facial challenge, an as-applied challenge or both.  Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009).  A facial challenge asserts that the law always operates unconstitutionally, while an as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case or as applied to a particular party.  Id.  Here, Plaintiffs have not alleged that the pen-and-ink requirement violates the Constitution in any way.  Instead, Plaintiffs have alleged that the pen-and-ink requirement violates the Materiality Provision.  If Defendants raise this argument in subsequent motions, they should be prepared to address whether this argument applies in a context other than constitutional law.

Plaintiffs' reading of the Materiality Provision, the Materiality Provision would be unconstitutional because it would "allow Congress to legislate . . . in a way that does not enforce the right to vote but instead creates the very right to absentee voting that the Supreme Court has rejected." [Doc. 36-1, p. 34].

The doctrine of constitutional avoidance is a cardinal principle of statutory interpretation.  It "directs that 'when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail.'"  Brown v. United States, 748 F.3d 1045, 1068 (11th Cir. 2014) (quoting Clark v. Martinez, 543 U.S. 371, 380-81 (2005)).  "This canon is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations."  Almendarez-Torrez v. United States, 523 U.S. 224, 238 (1998).

At this stage of the case, the Court cannot say that the doctrine of constitutional avoidance is even implicated in this matter.  Defendants have not directed the Court to which portion of the Materiality Provision is ambiguous such that the Court would need to engage in the exercise of statutory interpretation, and it is not apparent to the Court that the Materiality Provision is subject to more than one construction or is ambiguous in any way.  Moreover, even if the Materiality

Provision is ambiguous, the Court is not convinced that the construction for which Plaintiffs advocate would raise the constitutional problems that Defendants suggest.  Indeed, Plaintiffs' construction does not appear to create a right to vote absentee.  In sum, to the extent that Defendants seeks dismissal under a constitutional avoidance theory, Defendants' motion is **DENIED**.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Doc. 36] is **DENIED**.  As stated in the Scheduling Order, discovery is now open and shall close on November 9, 2023.  Dispositive motions shall be filed no later than December 11, 2023.

**SO ORDERED** this 9th day of March, 2023.

J. P. BOULEE
United States District Judge