# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| VOTE.ORG; GEORGIA ALLIANCE FOR RETIRED AMERICANS; COMMUNICATIONS WORKERS OF AMERICA LOCAL 3204 RETIRED MEMBERS COUNCIL, and PRIORITIES USA,<br><br>          Plaintiffs,<br><br>   v.<br><br>GEORGIA STATE ELECTION BOARD; EDWARD LINDSEY, JANICE W. JOHNSTON, SARA TINDALL GHAZAL, and MATTHEW MASHBURN, in their official capacities as members of the Georgia State Election Board; FULTON COUNTY REGISTRATION AND ELECTIONS BOARD; PATRISE PERKINS-HOOKER, AARON V. JOHNSON, MICHAEL HEEKIN, and TERESA K. CRAWFORD in their official capacities as members of the Fulton County Registration and Elections Board; DEKALB COUNTY BOARD OF REGISTRATION AND ELECTIONS; NANCY JESTER, SUSAN MOTTER, VASU ABHIRAMAN, ANTHONY LEWIS, AND KARLI SWIFT in their official capacities as members of the DeKalb County Board of Registration and Elections,<br><br>          Defendants. | Civil Action File No. 1:22-cv-1734-JPB<br><br><br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## <u>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiffs VOTE.ORG, GEORGIA ALLIANCE FOR RETIRED AMERICANS; COMMUNICATIONS WORKERS OF AMERICA LOCAL 3204 RETIRED MEMBERS COUNCIL; and PRIORITIES USA, by and through their undersigned counsel, file this COMPLAINT for DECLARATORY and INJUNCTIVE RELIEF against the GEORGIA STATE ELECTION BOARD; EDWARD LINDSEY, in his official capacity as a member of the Georgia State Election Board; JANICE W. JOHNSTON, in her official capacity as a member of the Georgia State Election Board; SARA TINDALL GHAZAL, in her official capacity as a member of the Georgia State Election Board; MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board; the FULTON COUNTY REGISTRATION AND ELECTIONS BOARD; PATRISE PERKINS-HOOKER in her official capacity as a member of the Fulton County Registration and Elections Board; KATHLEEN D. RUTH in her official capacity as a member of the Fulton County Registration and Elections Board; AARON V. JOHNSON in his official capacity as a member of the Fulton County Registration and Elections Board; MICHAEL HEEKIN in his official capacity as a member of the Fulton County Registration and Elections Board; and TERESA K. CRAWFORD in her official capacity as a member of the Fulton County Registration

1

and Elections Board; the DEKALB COUNTY REGISTRATION AND ELECTIONS BOARD; NANCY JESTER in her official capacity as a member of the DeKalb County Registration and Elections Board; SUSAN MOTTER in her official capacity as a member of the DeKalb County Registration and Elections Board; VASU ABHIRAMEN in his official capacity as a member of the DeKalb County Registration and Elections Board; ANTHONY LEWIS in his official capacity as a member of the DeKalb County Registration and Elections Board; KARLI SWIFT in her official capacity as a member of the DeKalb County Registration and Elections Board; and alleges as follows:

## NATURE OF THE CASE

1.      The question posed by this lawsuit is simple: can the State of Georgia use arcane rules and administrative traps to deny absentee ballots to eligible voters? Federal law makes clear that the State may not: Section 101 of the Civil Rights Act prohibits election officials from denying any individual the right to vote "because of an error or omission on any record or paper relating to any application" if the error or omission is immaterial in determining whether the individual is qualified to vote. 52 U.S.C. § 10101(a)(2)(B).

2.      Yet, in Georgia, an individual's application for an absentee ballot can be rejected simply because they used the wrong writing instrument. Georgia law dictates that all absentee ballot applications must be signed with "pen and ink" (the

2

"Pen and Ink Rule")—a requirement inserted without explanation into a haystack of voter suppression measures passed by the state legislature in response to record turnout in the 2020 general election and subsequent runoffs. S.B. 202, § 25, 156th Gen. Assemb., Reg. Sess. (Ga. 2021 Act 9) (amending <u>O.C.G.A. § 21-2-381(a)(1)(C)(i)</u>).

3.      This antiquated rule is irreconcilable with the legislature's suggestion that SB 202 would eliminate the use of signatures as a means of verifying absentee voters in Georgia's elections. Representative Barry Fleming, one of the key sponsors of SB 202, criticized the signature matching processes as "subjective." Hearing on SB 202; Spec. Comm. on Election Integrity, Feb. 18, 2021 (Ga. Leg.). During hearings on the bill, Representative Alan Powell stated that signatures caused "numerous problems" in the 2020 election. Hearing on SB 202; Spec. Comm. on Election Integrity, February 19, 2021 (Ga. Leg.).

4.      But perhaps the strangest aspect of the Pen and Ink Rule is that it singles out only applications submitted by mail or in person. Voters may also submit the form by fax or email, which effectively digitizes their signature. Election officials have little opportunity to assess whether a faxed or emailed application form was originally signed with a pen and ink—proving false any suggestion that the Pen and Ink Rule is material to determining a voter's qualifications.

5.     The Pen and Ink Rule also runs counter to the State's decades-long effort to move toward digital signatures. Georgia law *demands* the acceptance of digital signatures when an individual registers to vote while obtaining a driver's license or hunting license. Georgia also accepts digital signatures for purposes such as recording and registering property deeds, filing auto liens, and many real estate transactions. More than a decade before adopting the Pen and Ink Rule, the Georgia legislature declared that it would "promote economic development and efficient delivery of government services by encouraging state governmental agencies and private sector entities to conduct their business and transactions using electronic media," particularly digital signatures. O.C.G.A. § 50-29-12(a).

6.     Digital signatures are increasingly important to ensuring that voters who rely on absentee ballots and lack access to printers, scanners, or fax machines can access the ballot box. Demanding that all absentee ballot applications be signed in "pen and ink" simply generates errors that can be used to reject applications—a game of "gotcha" serving only to trip up otherwise lawful, eligible voters.

7.     The Pen and Ink Rule therefore imposes unnecessary procedural hoops in the absentee ballot application process. For these reasons and those stated below, Plaintiffs request that the Court declare that the Pen and Ink Rule violates Section 101 of the Civil Rights Act of 1964 and enjoin its enforcement in future elections.

## JURISDICTION AND VENUE

8.      Plaintiffs bring this action under 52 U.S.C. § 10101 and 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the federal Civil Rights Act.

9.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the laws of the United States and involve the assertion of deprivation, under color of state law, of rights secured under federal law.

10.     This Court has personal jurisdiction over Defendants, who are sued in their official capacities.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants reside in the Northern District of Georgia, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to Plaintiffs' claims occurred and will occur in this judicial district.

12.     This Court has the authority to enter declaratory judgment and provide injunctive relief under Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

13.     Plaintiff Vote.org is the largest 501(c)(3) nonprofit, nonpartisan voter registration and get-out-the-vote technology platform in the country. Vote.org uses

technology to simplify political engagement, increase voter turnout, and strengthen American democracy. Vote.org works extensively to support historically underserved voters, including racial and ethnic minorities and younger voters who tend to have lower voter-turnout rates. Those wishing to learn about registering and voting in Georgia turned to Vote.org more than 2 million times between January 1, 2020 and June 30, 2021. During that period, Vote.org helped more than 80,000 Georgians who sought information about absentee voting by guiding them to the State's now-defunct online application or, in almost 9,000 instances, providing tools voters could use to complete a printable absentee ballot application themselves.

14.   In preparation for the 2018 general and special elections, Vote.org invested significant resources in developing and launching an e-signature function of its web application that helped roughly 8,000 Georgians request an absentee ballot. The e-signature function of Vote.org's web application allowed qualified voters throughout Georgia to enter information into an online absentee ballot application; sign the form by uploading an image of their original signature into the web application; review their signed absentee ballot application; and fax the completed application to their county registrar as required by Georgia law. In 2020, Vote.org referred voters to the State's own web portal, which at the time allowed voters to apply for an absentee ballot entirely online without a wet signature. But

soon after the enactment of the Pen and Ink Rule, the State disabled its online application.

15.    The Pen and Ink Rule prevents Vote.org from resuming use of one of its most effective tools: the e-signature function of its absentee ballot web application. But for the Rule, Vote.org would build on its existing e-signature function to provide Georgia voters with the option to sign and submit their application electronically. *See* O.C.G.A. § 21-2-381(a)(1)(A). No longer able to use this feature, Vote.org has been, and will continue to be, forced to divert resources from its general, nationwide operations—as well as its specific programs in other states—to redesign its absentee ballot web application and employ more expensive (and less effective) means of achieving its voter participation goals in Georgia.

16.    Plaintiff Georgia Alliance for Retired Americans (the "Alliance") brings this action on behalf of its members. The Alliance is incorporated in Georgia as a 501(c)(3) nonprofit, social welfare organization. It has tens of thousands of members, including retirees from public and private sector unions, community organizations, and individual activists, and is a chartered state affiliate of the Alliance for Retired Americans. The Alliance's mission is to ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work.

17.     The Pen and Ink Rule threatens to deny the Alliance's members—in some cases successfully—the opportunity to vote. It is particularly burdensome for the many Alliance members who rely on absentee voting. The Pen and Ink Rule forces such members into a cumbersome process involving some combination of calls to election officials, mailed requests for an application, a mailed blank application, and a mailed completed application. In addition to being burdensome, this process has multiple points of failure or delay, any one of which could prevent the member from receiving an absentee ballot. For reasons financial, physical, or geographic, some Alliance members cannot vote in person, and an inability to successfully apply for an absentee ballot will deny them their vote.

18.     The Communications Workers of America Retired Members Council Local 3204 ("CWA-RMC") brings this action on behalf of its members. The CWA-RMC is an association of more than 2,000 retirees who worked in Georgia's telecom industry. It is a chartered affiliate of the Communications Workers of America. The CWA-RMC is also an affiliate of the Georgia Alliance of Retired Americans and its members also enjoy membership in the Alliance. The CWA-RMC's mission is to protect the social and economic wellbeing of its members including advocating for their civil rights.

19.     The Pen and Ink rule threatens to deny the CWA-RMC's members the right to vote, particularly its many members who rely on absentee voting. The Pen

and Ink Rule forces such members into a cumbersome process. For some members, this will involve some combination of calls to elections officials, mailed requests for an application, a mailed blank application, and a mailed completed application. Other members will have to rely on family or commercial printing services, requiring additional time, travel, and cost. In addition to being burdensome, this process has multiple points of failure or delay, any one of which could prevent the member from receiving an absentee ballot. For reasons financial, physical, or geographic, some CWA-RMC members cannot vote in person, and an inability to successfully apply for an absentee ballot will deny them their vote.

20.     Plaintiff Priorities USA ("Priorities") is a 501(c)(4) nonprofit, voter-centric, progressive advocacy and service organization. Priorities' mission is to build a permanent infrastructure to engage Americans by persuading and mobilizing citizens around issues and elections that affect their lives. In furtherance of this purpose, Priorities works to educate and turn out voters across the country, including in Georgia.

21.     To counter the confusion and burden caused by the Pen and Ink Rule, Priorities has been, and will continue to be, forced to divert funding away from its core mission and towards helping voters obtain absentee ballots. A significant focus of Priorities' work in Georgia is reaching audiences through digital advertising. Such audiences include individuals who increasingly depend on all-digital processes,

including digital signatures to conduct personal, professional, and civic business. The Pen and Ink Rule's prohibition of digital signatures complicates the voting process for the very audiences Priorities works to mobilize. And in states like Georgia that do not have an all-digital ballot application option, Priorities must spend significantly more money to aid absentee voters. This increased cost is due in part to the need to educate voters on the various steps required to vote absentee and to provide voters with the tools necessary to do so. Such processes are also slower, requiring additional staff time and greater spending on efforts to reach voters and coach them through the process.

22.    Defendants Edward Lindsey, Janice W. Johnston, Sara Tindall Ghazal and Matthew Mashburn are members of the Georgia State Election Board ("SEB") and are named in their official capacities as members of the SEB ("SEB Defendants"). As members of the SEB, the SEB Defendants are authorized by the state legislature to formulate, adopt, and promulgate such rules and regulations, consistent with Georgia law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections in Georgia. O.C.G.A. § 21-2-31(1)-(2). SB 202 authorized the SEB to promulgate rules consistent with the law, and on October 28, 2021, the SEB Defendants adopted regulations implementing the Pen and Ink Rule. Ga. Comp. R. & Regs. § 183-1-14-.12.

23.     Defendants Patrise Perkins-Hooker, Kathleen D. Ruth, Aaron V. Johnson, Michael Heekin, and Teresa K. Crawford are sued in their official capacities as members of the Fulton County Registration and Elections Board (collectively the "Fulton County Defendants"). In this capacity, the Fulton County Defendants oversee Fulton County's voting activities. *See* O.C.G.A. § 21-2-40; O.C.G.A. § 21-2-70. This includes assuming the role of registrar, or overseeing the absentee ballot clerk, in reviewing each absentee ballot application to ensure it conforms with Georgia law (including the Pen and Ink Rule) and issuing ballots to voters whose applications are satisfactory. O.C.G.A. § 21-2-380.1, O.C.G.A. § 21-2-381(b). The Fulton County Defendants are sued for the manner in which they enforce the Pen and Ink Rule.

24.     Defendants Nancy Jester, Susan Motter, Vasu Abhiramen, Anthony Lewis, and Karli Smith are sued in their official capacities as members of the DeKalb County Board of Registration and Elections (collectively the "DeKalb County Defendants"). In this capacity, the DeKalb County Defendants oversee DeKalb County's voting activities. *See* O.C.G.A. § 21-2-40; O.C.G.A. § 21-2-70. This includes assuming the role of registrar, or overseeing the absentee ballot clerk, in reviewing each absentee ballot application to ensure it conforms with Georgia law (including the Pen and Ink Rule) and issuing ballots to voters whose applications are

satisfactory. O.C.G.A. § 21-2-380.1, O.C.G.A. § 21-2-381(b). The DeKalb County Defendants are sued for the manner in which they enforce the Pen and Ink Rule.

## STATEMENT OF FACTS AND LAW

25.    Georgians may submit an absentee ballot application by fax, email, or using a paper application submitted by mail or in person. Voters submitting a paper application must sign their application form with "pen and ink."

26.    The signature requirement for absentee ballot applications is relatively new. It was first adopted in 2016 as an administrative rule but did not mandate the use of any particular writing instrument. *See* Ga. Comp. R. & Regs. § 183-1-14-.12 (2016). Even then, its only statutory role was to be compared with the signature on the voter's registration card to ensure they matched. *See, e.g.,* O.C.G.A. § 21-2-381(b)(5) (2008). This predecessor to the State's photo ID requirement was known as "signature verification." But under SB 202, signature matching is no longer a part of the verification process.

27.    During legislative hearings on SB 202, Georgia legislators renounced the use of signatures in the context of elections. Barry Fleming, the chair of the House Special Committee on Election Integrity, which was formed in the wake of the 2020 general election, summarized the concerns and goals of legislators regarding signature verification by explaining that "[t]here was significant discussion, controversy, consternation, with parts of the process, particularly the

signature verification process. And one thing you will see that this bill does is attempt to move from what is a subjective process, that being signature, to an objective process . . . ." Hearing on SB 202 before the House Special Committee on Election Integrity, Feb. 18, 2021 (Ga. Leg.).

28.     In other words, Georgia legislators clearly expressed their intent to move away from the use of signatures to verify voters in the absentee voting process. Election Integrity Act of 2021, Ga. Laws Act 9 § 2(2) ("Many Georgia election processes were challenged in court, including the subjective signature-matching requirements, by Georgians on all sides of the political spectrum before and after the 2020 general election."). By eliminating signature matching with SB 202, the legislature wrote out of Georgia law the only purpose signatures on absentee ballot applications ever served.

29.     But rather than abandon the now meaningless signature requirement, the legislature doubled down. The very legislators who passed SB 202 in part to move away from signature verification turned around and created an entirely new signature requirement and added a mandate that the signature be applied "with a pen and ink." O.C.G.A. § 21-2-381(a)(1)(C)(i). Having stricken the signature's previous statutory purpose, the legislators had to create a new role for the signature. The signature now affirms "that the elector is a qualified Georgia elector and the facts presented on the application are true." *Id*. But the legislature offered no justification

for demanding that this signature appear *in pen and ink* when an electronic, digital, or imaged signature would suffice.

30.    This meaningless requirement is now enshrined in Georgia law. Following SB 202's enactment, the SEB Defendants voted unanimously to adopt the Pen and Ink Rule on October 28, 2021, and, as a result, all registrars and absentee ballot clerks must now comply with it. *See* O.C.G.A. § 21-2-31(1)-(2).

31.    The Pen and Ink Rule is not only archaic but is also out of step with state laws and procedures governing the use of signatures in elections and in other important contexts. *See*, *e.g.*, Ga. Comp. R. & Regs. 183-1-14-.02(11) ("Voters who vote absentee ballots in person shall first complete an absentee ballot application and sign an oath, which may be on the same form and may be on paper or digital."). When an eligible Georgian applies for a hunting, fishing, or trapping license issued by the Department of Natural Resources, for example, the voter is offered the opportunity to register to vote at the same time. To do so, the voter completes and signs an application provided by the Department of Natural Resources and the Secretary of State, which allows them to capture a digital signature. O.C.G.A. § 21-2-211.1. The law requires that the department transmit the completed applications to the Secretary at the end of each day and specifically allows for digital transmission. O.C.G.A. § 21-2-211.1(f), (i). The law goes on to state that "[s]uch electronically transmitted signatures *shall be valid* as signatures on the voter

14

registration application and shall be treated in all respects *as a manually written original signature* and shall be recognized as such in any matter concerning the voter registration application." O.C.G.A. § 21-2-221.1(i) (emphasis added).

32.    The well-established legitimacy of digital signatures is further illustrated by the State's broad recognition and acceptance of such signatures in other important transactions. For real estate deeds, "[a]n electronic signature shall satisfy any requirement as a condition for recording that a document be signed." O.C.G.A. § 44-2-37(b). Public officers are required to accept electronic signatures on transportation-related bonds. O.C.G.A. § 32-2-70(b). Georgia's Commerce and Trade Code states that "[a] record or signature shall not be denied legal effect or enforceability solely because it is in electronic form" and that "[i]f a law requires a signature, an electronic signature shall satisfy the law." O.C.G.A. § 10-12-7(d).

33.    The Pen and Ink Rule creates a meaningless administrative trap for Georgians. Voters who rely on absentee ballots—including those who are ill, disabled, limited by family and work obligations, or temporarily relocated—risk having their absentee ballot applications rejected unless they either print their absentee ballot applications or wait for election officials or third parties to provide them with paper applications. This barrier exists despite the fact that the method of signing is irrelevant to the application process.

## CLAIM FOR RELIEF

## COUNT I

### 52 U.S.C. § 10101; 42 U.S.C. § 1983
### Violation of 52 U.S.C. § 10101(a)(2)(B)
### Against All Defendants

34.     Plaintiffs reallege and reincorporate by reference paragraphs 1-7 and 22-30 of this Complaint and the paragraphs in the count below as though fully set forth herein.

35.     52 U.S.C. § 10101(a)(2)(B) (the "Materiality Provision") provides that:

> [n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

36.     "[T]his provision asks whether, accepting the error as true and correct, the information contained in the error is material to determining the eligibility of the applicant." *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308 (N.D. Ga. 2018). For the purposes of the Materiality Provision, "the word 'vote' includes all action necessary to make a vote effective." 52 U.S.C. 10101(e).

37.     An absentee ballot application is an "application" as described by the plain language of the statute. For those voting by absentee ballot, an absentee application is "an act requisite to voting" as it must be completed to receive a ballot.

38.     Absentee ballots are the only means by which many Georgians can vote. Georgians who are hospitalized, temporarily relocated, homebound, or without transportation cannot vote without completing an absentee ballot application. Many Georgians also lack access to printers and cannot print out an application on which to sign with pen and ink.

39.     The Pen and Ink Rule is immaterial to determining whether an elector is qualified to vote. "[T]he only qualifications for voting in Georgia are U.S. Citizenship, Georgia residency, being at least eighteen years of age, not having been adjudged incompetent, and not having been convicted of a felony." *Martin*, 347 F. Supp. 3d at 1308. The method of signing an absentee ballot application bears no relation to those qualifications. Under Georgia law, a pen and ink signature serves no purpose for which a digital or imaged signature would not suffice, as evidenced by the fact that the State accepts copies of signatures on application forms returned by fax or email, and previously accepted applications with *no hand-written signature* from voters who applied using the State's online portal.

40.     Defendants' enforcement of the Pen and Ink Rule deprives Georgians—including voters that wish to use Plaintiff Vote.org's web application to complete absentee ballot applications—of the rights secured to them by 52 U.S.C. § 10101(a)(2)(B).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

a.  Declaring that the Pen and Ink Rule, as it appears in O.C.G.A. § 21-2-381, and any other provisions requiring a voter to sign an absentee ballot application form with pen and ink, violate 52 U.S.C. § 10101(a)(2)(B);

b.  Preliminarily and permanently enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Pen and Ink Rule and any other provisions requiring a voter to sign an absentee ballot application form with pen and ink;

c.  Awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d.  Granting such other and further relief as the Court deems just and proper.

Dated: November 3, 2023                    Respectfully submitted,


Adam M. Sparks                             /s/ *Uzoma N. Nkwonta*
Georgia Bar No. 341578                     Uzoma N. Nkwonta*
John F. Cartwright*                        Michael Jones
KREVOLIN & HORST, LLC                      Georgia Bar No. 721264
1201 W. Peachtree St., NW                  Noah Baron*
One Atlantic Center, Suite 3250            Marcos Mocine-McQueen*
Atlanta, GA 30309                          Meaghan Mixon*
Telephone: (404) 888-9700                  ELIAS LAW GROUP
Facsimile: (404) 888-9577                  250 Massachusetts Ave. NW
sparks@khlawfirm.com                       Suite 400
cartwright@khlawfirm.com                   Washington, D.C. 20001
                                           Telephone: (202) 968-4490
                                           unkwonta@elias.law
                                           mjones@elias.law
                                           nbaron@elias.law
                                           mmcqueen@elias.law
                                           mmixon@elias.law
                                           *Counsel for Plaintiffs*
                                           *Admitted pro hac vice*