IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VOTE.ORG, *et al*,

|                                  |
| Case No. 1:22-cv-01734           |

*Plaintiffs*,

v.

GEORGIA STATE ELECTION
BOARD, *et al.*

*Defendants*.

## **STATEMENT OF INTEREST OF THE UNITED STATES**

## INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  This case presents important questions relating to the enforcement of the Materiality Provision in Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B) ("Materiality Provision" or "Section 101").  Congress has given the Attorney General authority to enforce the Civil Rights Act on behalf of the United States.  *See* 52 U.S.C. § 10101(c).  Accordingly, the United States has a substantial interest in ensuring the Act's proper interpretation.

The United States submits this Statement of Interest to address issues related to the scope and enforcement of the Materiality Provision, which State Defendants and Intervenors raise in their Motion for Summary Judgment.  *See* Def. Mot., ECF No. 156; Int. Joinder, ECF No. 158.  Defendants' arguments fall short.  First, private plaintiffs can enforce the Materiality Provision using 42 U.S.C. § 1983: the Provision creates a federal right, and the internal enforcement scheme is not so comprehensive that it indicates congressional intent to displace Section 1983 enforcement.  Second, the Materiality Provision applies to all application, registration, and voting requirements, and a State's purported interest in a particular requirement is irrelevant to whether that requirement violates the

1

Provision.  Finally, states cannot override Materiality Provision mandates merely by declaring voting requirements to be "material" that do not bear on a voter's substantive qualifications to vote.  The United States expresses no view on any issues other than those set forth in this brief.

## PROCEDURAL BACKGROUND

Georgia law requires that "[a]ny person applying for an absentee-by-mail ballot shall make application in writing," and that the application form include "an oath for the elector or relative to *write his or her usual signature with a pen and ink* affirming that the elector is a qualified Georgia elector and the facts presented on the application are true."  Ga. Code Ann. § 21-2-381(a)(1)(C)(i) (emphasis added).  Plaintiffs challenge the requirement that voters sign the oath on absentee ballot applications with pen and ink. First Am. Compl., ECF No. 96.

Plaintiffs filed their complaint on May 2, 2022 and an amended complaint on November 7, 2023.  Compl., ECF No. 1; Am. Compl., ECF No. 96.  Their amended complaint challenges Georgia's requirement that voters sign absentee ballot applications in pen and ink ("wet signature requirement").  Am. Compl. ¶ 2. Plaintiffs contend that the wet signature requirement violates the Materiality Provision.  *Id.* at ¶¶ 34-40.

On March 3, 2023, this Court denied Defendants' motion to dismiss, holding, among other things, that the Materiality Provision is privately enforceable.

Order at 14, ECF No. 59.  Thereafter, Plaintiffs and Defendants cross-moved for summary judgment.  Pl. Mot., ECF No. 159; Def. Mot., ECF No. 156.  Intervenor Defendants joined in Defendants' motion.  Int. Joinder, ECF No. 158.

## STATUTORY BACKGROUND

The Materiality Provision prohibits denying the right to vote "because of an error or omission" in any "application, registration, or other act requisite to voting, if such error or omission is not material in determining" qualification to vote.  52 U.S.C. § 10101(a)(2)(B).  The Civil Rights Act's definition of "vote" includes "all action necessary to make a vote effective including, but not limited to, registration or other action required by state law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast."  *Id.* § 10101(a)(3)(A), (e).

The Materiality Provision was preceded by the Enforcement Act of 1870, in which the Reconstruction Congress decreed that qualified voters were eligible to vote without regard to "race, color, or previous condition of servitude," and prohibited any state laws that purported to prohibit the franchise for such impermissible reasons.  Act of May 31, 1870, ch. 114 § 1, 16 Stat. 140 (codified as amended in 52 U.S.C. § 10101(a)(1)).  For a time, private parties brought civil enforcement actions to effectuate the Enforcement Act of 1870.  *See*, *e.g.*, *Smith v. Allwright*, 321 U.S. 649, 650-51 & n.1 (1944); *Kellogg v. Warmouth*, 14 F. Cas.

257, 258 (C.C.D. La. 1872).  That changed when the Civil Rights Act of 1957

added four subsections to Section 101 and granted the Attorney General

enforcement authority in civil suits.  *See* H.R. Rep. 85-291, at 1970, 1976 (1957);

Pub. L. No. 85-315, § 131, 71 Stat. 634, 637 (codified as amended in 52 U.S.C.

§ 10101(e)).  Further amendment in 1960 authorized the Attorney General to bring

pattern-or-practice claims for racial discrimination in voting.  Civil Rights Act of

1960, Pub. L. No. 86-449, § 601, 74 Stat. 86, 90-92 (codified as amended in 52

U.S.C. § 10101(e)).  Finally, Section 101 of the Civil Rights Act of 1964 again

amended the statute to protect voting rights.  H.R. Rep. 88-914, at 2393 (1963); *see*

Pub. L. No. 88-352, § 101, 78 Stat. 241, 241-42.  Among these amendments was

the Materiality Provision still in force today.  *See* 52 U.S.C. § 10101(a)(2)(B); Pub.

L. No. 88-352, § 101, 78 Stat. 241.

## LEGAL STANDARD

Summary judgment "is appropriate only if 'there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law.'"

*Wright v. Sumter Cnty. Bd. of Elections & Registration*, 657 F. App'x 871, 872

(11th Cir. 2016) (quoting *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F.3d 1293,

1297 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).  A fact is material "if, under

the applicable substantive law, it might affect the outcome of the case."  *Hickson*

*Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1259 (11th Cir. 2004).

## ARGUMENT

### A. Private plaintiffs can enforce the Materiality Provision via U.S.C. § 1983

The Materiality Provision is privately enforceable through 42 U.S.C. § 1983.

Section 1983 provides a general remedy for private plaintiffs to redress violations

of federal rights committed by state actors. *See Maine v. Thiboutot*, 448 U.S. 1, 4

(1980) (holding that "the plain language" of Section 1983 "undoubtedly embraces"

suits by private plaintiffs to enforce federal statutory rights). The Eleventh Circuit

has held that private parties may enforce the Materiality Provision through Section

1983. *Schwier v. Cox* (*Schwier I*), 340 F.3d 1284, 1297 (11th Cir. 2003). Other

courts agree. *See*, *e.g.*, *Vote.org v. Callanen*, 89 F.4th 459, 474 (5th Cir. 2023);

*Migliori v. Cohen*, 36 F.4th 153, 162 (3d Cir. 2022), *judgment vacated sub nom.*

*Ritter v. Migliori*, 143 S. Ct. 297 (2022).[1] This Court correctly recognized *Schwier*

*I* as "binding precedent" on the issue in its March 9, 2023 Order denying

---

[1] The Supreme Court vacated *Migliori* after the underlying dispute became moot. *See Ritter*, 143 S. Ct. at 298 (citing *United States v. Munsingwear, Inc*., 340 U.S. 36 (1950)). Still, the substantive analysis of Section 1983 enforcement in *Migliori* is persuasive. *See, e.g. Callanen*, 89 F.4th at 480 (5th Cir. 2023) (relying on *Migliori* "even though the Supreme Court vacated the opinion"); *see also United States v. Ambriz*, 727 F.3d 378, 384 n.8 (5th Cir. 2013) (relying on "a case that was vacated for other reasons"); *Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408, 427 (3d Cir. 2020) (relying on vacated opinion where "prior analysis continues to resonate"). The Sixth Circuit has held that the Materiality Provision "is enforceable by the Attorney General, not by private citizens," *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000), but provided no reasoning for that holding.

Defendants' motion to dismiss.  Order at 14.  Accordingly, *Schwier I* controls here.

Defendants mischaracterize recent Supreme Court decisions to urge this Court to defy Eleventh Circuit precedent and discard this Court's prior ruling. None of the cases on which Defendants rely address the Materiality Provision or affect *Schwier I*'s analysis.  *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, 596 U.S. 482 (2022), both evaluate private remedies for claims brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), a "disfavored" judge-made doctrine allowing suit against federal officials for damages in extremely narrow circumstances, *Egbert*, 596 U.S. at 491 (citation omitted).  Plaintiffs suing for Materiality Provision violations, by contrast, seek injunctive relief under a federal statute, 42 U.S.C. § 1983, that expressly authorizes remedies against state officials for violations of federal rights.

Nor does the Court's decision in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021), affect the Eleventh Circuit's decision in *Schwier I*.  *Brnovich* dealt with Section 2 of the Voting Rights Act (VRA), as amended in 1982, not with the Materiality Provision, which is part of a different statute—the Civil Rights Act of 1964.  *Compare* 52 U.S.C. § 10101(a)(2)(B) (passed 1964), *with* 52 U.S.C. § 10301 (amended 1982).  And even as to Section 2, *Brnovich* did not, as Defendants claim, "address[] private remedies in the VRA." Def. Mot. at 4.  It stated that "a fresh look at the statutory text [was] appropriate"

regarding the statute's substantive scope, because it was the Court's "first § 2 time, place, or manner case." *Brnovich*, 141 S. Ct. at 2337.  But the majority opinion did not question that private plaintiffs could sue under Section 2.  Defendants quote Justice Gorsuch's concurrence in *Brnovich*, which flagged the right-of-action issue, but the concurrence itself acknowledges that the Court "need not and does not address that issue today." *Id.* at 2350 (Gorsuch, J., concurring).  While Justice Gorsuch claimed that some lower courts have treated the availability of private enforcement of VRA Section 2 as an "open question," *see id.*, that statement decided nothing and spoke for only two Justices.  It did not abrogate any lower court's ruling that Section 2 does create an implied private right of action, much less alter the Eleventh Circuit's determination that private plaintiffs can enforce the Materiality Provision—a different statute—via the express right of action provided by Section 1983.  *Schwier I*, 340 F.3d at 1294-95; *see also Allen v. Milligan*, 599 U.S. 1, 42 (2023) (upholding preliminary injunctions, after *Brnovich*, in Section 2 redistricting cases brought by private plaintiffs).

Indeed, more recent case law only confirms that *Schwier I* was correctly decided.  The Supreme Court, applying the same test as in *Schwier I*, recently reiterated that personal federal rights are enforceable under Section 1983 unless the rights-creating statute expressly displaces Section 1983 or includes "a private judicial right of action, a private federal administrative remedy, or any carefu[l]

congressional tailor[ing] that § 1983 actions would distort." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183-84, 190 (2023) (alterations in original; internal citations and quotation marks omitted).  The Materiality Provision includes none of these things.  It merely creates an additional, *public* right of action for the Attorney General and authorizes the Attorney General to bring an additional type of claim.  52 U.S.C. §§ 10101(c), (e).  These provisions *supplement*, rather than supplant, the private Section 1983 remedy.  *See Schwier I*, 340 F.3d at 1296.

## B. A State's purported interest must yield if a practice violates the Materiality Provision.

Defendants attempt to coin an exception to the Materiality Provision for requirements that serve a compelling state interest.  Def. Mot. at 26.  No such exception exists.  Indeed, the statute's text reaches *all* State action.  The Provision prevents States from "requiring unnecessary information" as a prerequisite to voting, and then using errors or omissions in providing that information as "an excuse to disqualify potential voters."  *Schwier I*, 340 F.3d at 1294.  To determine whether a State's law violates the Materiality Provision, the principal inquiry is whether the error or omission—here, providing a digital signature rather than

signing with pen and ink—is material to determining whether a voter is qualified to

vote.[2]

**1. The Materiality Provision applies to all State laws and practices affecting the right to vote.**

Defendants stray when they analogize to constitutional and Voting Rights

Act cases that distinguish between requirements that merely delineate "the voting

process" and those that govern the qualifications of voters.  Def. Mot. at 31.  The

Materiality Provision makes no such distinction.[3]  Rather, the Provision applies, by

---

[2] Courts regularly apply the Materiality Provision to paperwork requirements on mail ballot applications and envelopes.  *See, e.g.*, *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 540-41 (W.D. Tex. 2022); *League of Women Voters of Ark. v. Thurston*, No. 5:20-cv-5174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021); *Org. for Black Struggle v. Ashcroft*, 493 F. Supp. 3d 790, 803 (W.D. Mo. 2020), *stay granted*, 978 F.3d 603 (8th Cir. 2020); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308-09 (N.D. Ga. 2018).

[3] *Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania* held that the Materiality Provision "targets laws that restrict who may vote," not "state requirements on how qualified voters may cast a valid ballot." 97 F.4th 120, 131 (3d Cir. 2024).  Of course, Third Circuit precedent does not bind this Court, and this Court should not follow it.  The decision is currently the subject of rehearing petitions, rendering its future viability uncertain.  *See* Pet. for Reh'g or Reh'g En Banc, ECF No. 233, *Pa. NAACP*, No. 23-3166 (3d Cir.) (filed April 10, 2024); Pet. for Reh'g or Reh'g En Banc of the Sec'y of the Commw. and Philadelphia, Allegheny, Bucks, Delaware, and Montgomery County Boards of Elections, ECF No. 234, *Pa. NAACP*, No. 23-3166 (3d Cir.) (filed April 10, 2024).  Regardless, for the reasons the United States explained in its amicus brief in that case*, see* U.S. Br. as Amicus Curiae at 10-24*,* ECF No. 168, *Pa. NAACP*, No. 23-3166, (3d Cir.) (filed Jan. 10, 2024), the Third Circuit's analysis is simply incorrect.  Nothing in the Materiality Provision's text exempts from the statute's reach a law like Georgia's, affecting absentee ballot applications, while

its terms, to all state actions that determine whether a voter can register to vote, cast a ballot, and have that ballot counted.  It does not rely on a colloquial definition of the "right to vote," or on courts' definition of the phrase for constitutional purposes in cases like *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).  *See La Unión del Pueblo Entero v. Abbott*, --- F. Supp. 3d ----, 5:21-CV-0844, 2023 WL 8263348, at *8 (W.D. Tex. Nov. 29, 2023) ("Unlike many other causes of action in the voting-rights context, the Materiality Provision is not a burden-interest balancing statute.  Materiality Provision violations are prohibited no matter their policy aim.").  Nor is case law interpreting Section 2 of the Voting Rights Act, such as *Brnovich*, particularly relevant here.  *Cf. Mi Familia Vota v. Fontes*, --- F.Supp.3d ----, No. CV-22-00509, 2024 WL 862406, at *49, n.59, *37-38 (D. Ariz. Feb. 29, 2024) (distinguishing the burden analysis in the *Anderson-Burdick* constitutional framework from the *Brnovich* Section 2 vote denial framework and applying neither to a simultaneously considered Materiality Provision claim).  The State's

---

near-identical wet-signature requirements on voter registration forms in Texas and Florida are subject to analysis under the Provision.  *See Callanen*, 89 F.4th at 489; *Vote.org v. Byrd*, No. 4:23-CV-111, 2023 WL 7169095, at *6 (N.D. Fla. Oct. 30, 2023), *appeal docketed sub nom. Disability Rts. Fla. v. Sec'y, State of Fla.*, No. 23-13727 (Nov. 13, 2023).

proffered purpose for a law that violates the Materiality Provision is irrelevant. *See Schwier v. Cox* (*Schwier II*), 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005).[4]

The Fifth Circuit recently applied a complicated analytical framework to uphold Texas's wet-signature requirement. *Callanen*, 89 F.4th at 486-89. This framework relied on the panel majority's view that courts owe "considerable deference" to States' election measures and must give "weight" to their abstract "justification" for those measures. *Id.* at 481, 484-85. The Fifth Circuit's approach makes two errors that this Court should refrain from repeating.

First, the Fifth Circuit's standard is atextual. Indeed, rather than relying on the statute's plain language, the panel drew its statements about deference from constitutional right-to-vote cases, including *Crawford v. Marion County Elections Board*, 553 U.S. 181 (2008). *See Callanen*, F.4th at 481, 485. As the dissent noted, however, this right-to-vote doctrine "involves a different analytical framework than what we use for [statutory] claims." *Id.* at 492 (Higginson, J., dissenting) (citation omitted). Unlike the open-ended language of the First and Fourteenth Amendments, the Materiality Provision's text imposes a highly specific

---

[4] In their opposition to Plaintiffs' motion for summary judgment, State Defendants mischaracterize *Schwier II*'s holding to argue that a state's legitimate interests are relevant to a determination of materiality. Def. Resp. at 23, ECF No. 190. While the *Schwier II* court acknowledged the state's asserted interest, it held that the purported interest was not relevant to whether the challenged practice violated the Materiality Provision. *Schwier II*, 412 F. Supp. 2d at 1276.

mandate that "expressly limits states' purported 'considerable discretion.'"  *Id*.
Just as the statute "does not establish a least-restrictive-alternative test for voter
registration applications in the plain text of the statute," *Fla. State Conf. of NAACP
v. Browning*, 522 F.3d 1153, 1175 (11th Cir. 2008), its text neither inquires into the
strength of the government's interest nor adopts means-ends scrutiny, *see*, *e.g.*,
*Migliori*, 36 F.4th at 163.  Yet the Fifth Circuit borrowed these concepts from
constitutional law and grafted them onto the Materiality Provision.  *See Callanen*,
F.4th at 484-85.  That was error.

Second, the Fifth Circuit granted such extreme deference to the State's
interest that it failed to consider the record evidence.  "[A]s the district court" in
*Callanen* "carefully found, factually, [Texas's] wet-signature requirement is
*undisputedly* pointless."  *Id*. at 492 (Higginson, J., dissenting) (alteration in
original).  Based only on its determination that "what Texas [was] arguing" on
appeal was "a reasonable understanding of the legislative judgment," the majority
"accept[ed]" that "physically signing [a registration] form with the warnings in
front of the applicant . . . has some prospect of getting the attention of many
applicants and dissuading false statements that an electronic signature, without
these warnings, does not."  *Id*. at 488-89 (majority opinion).  Based on this abstract
justification—and despite the undisputed evidence that Texas's wet-signature rule

did nothing to serve that purpose—the court upheld the rule as "meaningfully, even if quite imperfectly, correspond[ing] to" the State's interest. *Id*. at 489.

Such extraordinary deference to States' abstract interests substitutes states' post hoc legal justifications for the plain text Congress wrote and any evidence relevant to it. Materiality can be a legal, *per se* determination, such as when another federal law either requires or prohibits the collection of the challenged information, or when a state provides no explanation of how a requirement relates to determining voter qualifications. *E.g.*, *Browning*, 522 F.3d at 1174 & n.22. Otherwise, materiality is a fact-dependent determination of whether the state requirement at issue is material to officials' determinations of voters' qualifications. *See*, *e.g.*, *Migliori*, 36 F.4th at 163-64; *id*. at 165 (Matey, J., concurring in the judgment); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308-09 (N.D. Ga. 2018); *Ford v. Tennessee Senate*, No. 06-cv-2031, 2006 WL 8435145, at *10-11 (W.D. Tenn. Feb. 1, 2006).

Deferring to states' purported interests in lieu of the facts defies the statutory text. And it would allow states improperly to justify with hypothetical interests a law that in fact does not serve those interests. *See*, *e.g.*, *Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1346 (11th Cir. 2020); *Democratic Exec. Comm. Of Fla. v. Lee*, 915 F.3d 1312, 1322-23 (11th Cir. 2019); *accord Gill v. Scholz*, 962 F.3d 360, 365 (7th Cir. 2020).

13

**2. The correct test is whether the error is material to determining the applicant's substantive qualifications.**

The Materiality Provision itself defines the word "vote" broadly to "include[] all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting." 52 U.S.C. §§ 10101(a)(3)(A), (e). Since § 10101 defines "vote" to include the entire voting process, including obtaining an absentee ballot, "that addition to the plain meaning controls." *Tanzin v. Tanvir*, 592 U.S. 43, 49 (2020) (citation omitted). The Provision thus prohibits state actors from denying an absentee ballot application because of a paperwork error "relating to any *application*, registration, or other act" that "is not material in determining whether" the applicant "is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B) (emphasis added).

To answer the question of materiality, a court must first identify the state's substantive voter qualifications. *See*, *e.g.*, *Schwier I*, 340 F.3d at 1297. Then, the court must "ask[] whether, accepting the error *as true and correct*, the information contained in the error is material to determining the eligibility of the applicant." *Browning*, 522 F.3d at 1175 (alteration in original). "[T]he only *qualifications* for voting in Georgia are U.S. [c]itizenship, Georgia residency, being at least eighteen years of age, not having been adjudged incompetent, and not having been convicted of a felony." *Martin*, 347 F. Supp. 3d at 1308 (quoting *Schwier I*, 340

14

F.3d at 1297 (citing O.C.G.A. § 21-2-216)); *see also Vote.Org v. Ga. State Election Bd.*, 661 F. Supp. 3d 1329, 1340 (N.D. Ga. 2023). If a digital signature is accepted as a true mark made by the applicant seeking an absentee ballot, the digital nature of the signature is not material to determining whether a voter meets these five discrete qualifications.[5]

## C. State law cannot transform immaterial requirements into material ones.

Defendants next incorrectly contend that because state law requires an ink signature on an absentee ballot application, that ink signature is *per se* material to a voter's qualifications. Def. Mot. at 37-38. But the absentee ballot application is not a substantive qualification that itself determines a voter's eligibility. *See*, *e.g.*, *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013) (distinguishing between setting qualifications and obtaining information necessary to confirm those qualifications); *Ga. State Conf. NAACP v. Georgia*, No. 1:17-cv-1397, 2017 WL 9435558, at *3 (N.D. Ga. May 4, 2017) ("[E]very legal authority the Court has located supports the conclusion that voter registration is not itself a substantive qualification to vote, but rather a procedural method which an otherwise qualified

---

[5] Contrary to Defendants' supposition, it does not matter that the State provides an opportunity to cure. *See* Def. Resp. at 16-19, ECF No. 190. The statute "does not say that state actors may initially deny the right to vote based on errors or omissions that are not material as long as they institute cure processes." *La Unión del Pueblo Entero*, 604 F. Supp. 3d at 541.

voter must follow to exercise his or her right to vote." (internal quotation marks omitted) (citations omitted)); *Fish v. Kobach*, 840 F.3d 710, 750 (10th Cir. 2016) (rejecting argument that registration itself is a qualification to vote).  Thus, compliance with state laws regulating absentee ballot applications—such as an original signature requirement—are not themselves voter qualifications and cannot be used to prohibit an otherwise qualified voter from voting.

Intervenors' contrary interpretation would nullify the Materiality Provision. If any procedural requirement a legislature imposes becomes a voter qualification, then errors or omissions in meeting *any* aspect of state election law automatically would be material to determining whether the voter was qualified, and no denial of the right to vote on that basis could violate the Provision.

Indeed, under Intervenors' interpretation, the Materiality Provision would not have covered the very mechanisms of vote denial that Congress passed the Provision to override.  Evidence before Congress indicated that "[a]mong the devices most commonly employed" to prevent Black voters from registering was "applying more rigid standards of accuracy" to Black prospective voters than to white and rejecting Black applicants "for minor errors or omissions."  H.R. Rep. No. 88-914 at 2491.  "Testimony show[ed] that . . . registrars" would "overlook minor misspelling errors or mistakes in age or length of residence of white applicants," but deny Black applicants "for the same or more trivial reasons."  *Id.*

16

Congress also had before it a 1961 Commission on Civil Rights report documenting widespread denials of Black applicants' registration forms for immaterial errors—such as failing to correctly compute age in years, months, and days—as well as a list of voting rights cases brought by the Department of Justice to remedy these discriminatory practices.[6]  Yet if every requirement that states set to register or vote were deemed a "qualification," then errors in calculating the days of one's age would be material to determining voter qualifications, and so would fall outside the Provision's reach.  "That result not only would defy common sense, but also would defeat Congress' stated objective" of entirely eliminating such errors as a barrier to voters' ability to register and vote.  *See Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019).  "We should not lightly conclude that Congress enacted a self-defeating statute." *Id*.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendants' and Intervenor Defendants' motion for summary

---

[6] *See* Comm'n on Civil Rights, Voting: 1961 Commission on Civil Rights Report, Book 1, 54-57, 59, 66, 86 (1961), https://perma.cc/CC7B-T888; *Miscellaneous Proposals Regarding the Civil Rights of Persons Within the Jurisdiction of the United States: Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary*, 88th Cong., 1st Sess. 951, 1099, 1380 (1963) (referencing practices in 1961 Commission Report); *Literacy Tests and Voter Requirements in Federal and State Elections: Hearings Before the Subcomm. on Const. Rights of the Comm. on the Judiciary*, 87th Cong., 2d Sess. 515-22 (1962) (Department's list of cases).

judgment.

April 18, 2024

RYAN K. BUCHANAN
United States Attorney
600 U.S. Courthouse
75 Ted Turner Dr. SW
Atlanta, GA 30303

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

AILEEN BELL HUGHES
Assistant United States Attorney
    Georgia Bar No. 375505
Aileen.bell.hughes@usdoj.gov

*/s/ Holly F.B. Berlin*
R. TAMAR HAGLER
RICHARD DELLHEIM
HOLLY F.B. BERLIN
    Illinois Bar No. 6329447
KELLI M. SLATER
    Mississippi Bar No. 106157
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(800) 253-3931
holly.berlin@usdoj.gov

## __CERTIFICATE OF SERVICE__

I certify that on April 18, 2024, I filed the foregoing via the CM/ECF system, which sends notice to counsel of record.

_/s/ Holly F.B. Berlin_
Holly F.B. Berlin
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this document complies with Local Rule 5.1(C) because it is prepared in Times New Roman font at size 14.

<u>*/s/ Holly F.B. Berlin*</u>
Holly F.B. Berlin
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530